(No. 39197.—)

DALE PITTS, Appellee, *vs.* JOSEPH BASILE *et al.*—(AMBROSE MAIERS, d/b/a PACIFIC TOY HOUSE, Appellant.)

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

ROSS, KRALOVEC, SWEENEY, & MARQUED, of Chicago, (HENRY J. MARQUED and EDWARD V. SCOBY, of counsel,) for appellant.

JOHN C. MULLEN, of Chicago, (JAMES P. CHAPMAN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Dale Pitts, a minor, brought this action by his mother and next friend to recover for injuries incurred when he was struck in the eye by a dart thrown by another boy. The defendants were Joseph Basile and Salvatore Inzerillo, who operated the neighborhood grocery store at which the darts were purchased, and Ambrose Maiers, doing business as Pacific Toy House, the wholesaler who supplied the darts

to the other defendants. The jury returned a verdict in favor of the plaintiff and against all defendants in the sum of $50,000. The proprietors of the store filed no post-trial motions. Ambrose Maiers moved for a new trial and for judgment notwithstanding the verdict. His motion for a new trial was denied, but his motion for judgment notwithstanding the verdict was granted. On the plaintiffs' appeal the appellate court reversed and remanded, with directions to enter judgment on the verdict. (55 Ill. App. 2d 37.) We allowed leave to appeal.

On September 14, 1954, Lonnie Phillips, who was then eight years old, went to the store to buy some darts like those he had seen other boys using. The darts were hung on a display rack above a dairy freezer about five and one half feet tall. The rack contained "about sixty items all together," "all sorts of little games for youngsters," including teddy bears, little cap guns, little dolls, and balloons. The darts were about $6\frac{1}{2}$ inches long, with multi-colored feathers on one end and a $1\frac{1}{2}$-inch steel barb on the other. They were packaged in cellophane with a yellow cardboard backing containing a miniature circular target, below which was printed "SKILL DART GAME" in letters about $\frac{3}{4}$ of an inch high. On the top of the packet was stapled a header with the label, "KIDDY TOY-PAK" in $\frac{1}{2}$-inch letters and the price, 19¢. Each package contained two darts. Lonnie testified that he purchased the darts from a man in the store, and that "there were no instructions as to the use of the dart", either from the man or in the package.

On the following day Lonnie was throwing darts toward his parents' garage, and the plaintiff, Dale Pitts, who was standing 5 to 10 feet to Lonnie's right, was struck in the eye by a dart. Lonnie testified, "I was holding it in the flat of my hand and I threw it side-armed, and it slid off to the right." Dale Pitts, who was six years old at the time of the accident, testified that someone yelled "Look out" and he turned around and was hit in the eye by a dart. There was

conflicting testimony whether Lonnie Phillips's aunt had taken darts away from him before the accident. As a result of the injury Dale Pitts's vision was seriously and permanently impaired.

The defendant Maiers, who furnished the darts to the proprietors of the store, described his business as that of a "rack distributor", "which is primarily a service operation whereby we take specific items and display them in a store for sale to the public." Among the types of stores serviced were grocery stores, meat markets, hardware stores, variety stores, gift shops and newsstands. The defendant Maiers placed the items in cellophane bags with a header and hung them on the rack for display. The same header, reading "KIDDY TOY-PAK", was on every item, and Maiers testified that "it identifies the item to be something for a child, * * * a toy."

We are not concerned in this case with the liability of the proprietors of the grocery store who sold the darts to the eight-year-old boy, but with the liability of the defendant Maiers, who sold the darts to the proprietors of the grocery store. There was no contention or proof that the darts were in any way defective, and the appellate court emphasized that it was not characterizing them as "inherently dangerous." In this court, however, the plaintiff urges that the defendant's " 'non-defective' dart manifestly was not safe when used by small children for the purpose for which it was intended. The dart in question was intended to be thrown at various objects * * *. Its propensity to cause serious injury, particularly to the eyes, was demonstrated by the very injury suffered by the infant plaintiff in the instant case."

There are many things used by children that may be said to be unsafe when used for the purpose for which they are intended. A baseball, a baseball bat, a penknife, a Boy Scout hatchet, a bicycle, all have the capacity to injure the user or others in the course of their normal use. They are not,

however, to be categorized as "dangerous instrumentalities." As was said by the Tennessee court in *Highsaw* v. *Creech,* 17 Tenn. A. 573, 69 S.W.2d 249, 252, "an air gun is not a dangerous instrumentality of itself, but is in fact a toy. * * * The fact alone that an injury may be inflicted by such a toy does not make of it a dangerous instrumentality in the sense that the term is generally used." In *Morris* v. *Toy Box,* (Cal. App. 1962) 22 Cal. Rptr. 572, 574-5, a complaint brought by a minor against a retailer alleging that the retailer knew that the intended user of a bow and arrow was the purchaser's ten-year-old boy was dismissed, the court saying, "the bow and arrow has been in use by young and old alike for thousands of years. * * * To us it is simply inconceivable that a 10-year-old boy, much less his mother, would be unacquainted with the use of so common an article as the one here in question." See also, *White* v. *Page,* (Ohio App. 1950) 105 N.E.2d 652.

The plaintiff also urges that Maiers should be held liable because he did not warn the proprietors of the grocery store that the darts should not be sold to young children and because he failed to "put clear lettering on the dart package indicating that the dart should not be used by children." But if the law imposes upon the retailers the duty not to sell darts to children unable to appreciate the risks involved in their use, the efficacy of an additional gesture by the remote vendor seems wholly speculative. Similarly, a warning on the package itself to the effect, for example, that the darts should not be thrown in the direction of anyone in the vicinity would hardly do more than apprise even a child of what he already knew, and would be futile for children who could not read.

The plaintiff urges that the governing principle is stated in section 390 of the American Law Institute's Restatement of Torts 2d: "One who supplies directly or through a third person a chattel for the use of another whom the supplier

knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

We think it is significant, however, that of the eight illustrations contained in the Comment to section 390, six deal with the liability of persons who permitted an automobile to be driven by one who, for one reason or another, was known to be likely to create an unreasonable risk of harm. Another illustration involved the renting of a boat to intoxicated persons. The illustration that is closest to the case before us is illustration No. 1: "A gives a loaded gun to B, a feeble-minded girl of ten, to be carried by her to C. While B is carrying the gun she tampers with the trigger and discharges it, harming C. A is subject to liability to C." The factual situation presented in this illustration is remote indeed from the case before us.

*Semeniuk* v. *Chentis*, 1 Ill. App. 2d 508, 117 N.E.2d 883, (1954) is cited in the Reporter's Notes to section 390. There the complaint alleged that the defendant, a merchant who sold an air rifle to the father of a seven-year-old boy, knew or ought to have known that the boy was unacquainted with and inexperienced in the use of air rifles and that if the boy loaded or discharged the rifle it would be probable that a member of the public would come to some harm through the use of the rifle. The complaint also alleged that the boy was known to the merchant "to be a child of less than seven years of age, lacking in judgment and discretion and lacking in knowledge of the dangerous consequences of the use and discharge of an air rifle." The trial court sustained a motion to dismiss the complaint insofar as it asserted liability against the merchant. The appellate court reversed, and remanded the case for trial. The judgment of the appellate

court was not final, and was not subject to review by this court. Even in that case, however, liability was not asserted against the manufacturer of the rifle, or a remote vendor.

The plaintiff argues that the defendant Maiers is liable because the packaging and arrangement of the darts was designed to induce the purchase of the darts by children who could not appreciate the risk involved in their use. We are of the opinion, however, that whether or not the defendant was negligent in marketing the darts as he did, there is no proof in this case that this negligence was the cause of plaintiff's injury. When Lonnie Phillips, the boy who bought the darts, was asked whether he had seen anyone else with darts, he testified: "All the kids around had them. That is why I wanted to get some. * * * I asked where I could get some. They told me."

In our opinion this testimony is insufficient to show the requisite causal relation between the negligence which plaintiff asserts and the injury for which recovery is sought. It is axiomatic that "In order that a negligent actor shall be liable for another's bodily harm, it is necessary not only that the actor's conduct be negligent toward the other, * * * but also that the negligence of the actor be a legal cause of the other's harm." (Restatement 2d, Torts, §§ 430, 432.) To recover against Maiers because he marketed the darts in an improper manner, it would be necessary to establish that his manner of marketing the darts was a factor in Lonnie Phillips's decision to purchase them. From the record, the contrary appears to be true.

For the reasons stated, the judgment of the appellate court is reversed.

*Judgment reversed.*