(No. 42059.—

RICHARD T. GILLE, Appellant, *vs.* WINNEBAGO COUNTY HOUSING AUTHORITY, Appellee.

*Opinion filed January 21, 1970.—Rehearing denied March 23, 1970.*

ASHER, GREENFIELD, GUBBINS AND SEGALL, of Chicago, (IRVING M. GREENFIELD and IRVING D. LEVIN, of counsel,) for appellant.

RENO, ZAHM, FOLGATE & SKOLROOD, of Rockford, (ROBERT K. SKOLROOD, of counsel,) for appellee.

Mr. JUSTICE CULBERTSON delivered the opinion of the court:

Plaintiff instituted an action in the circuit court of Winnebago County seeking damages for personal injuries sustained by him when, on July 14, 1953, he received severe burns to his body while near a trash burner maintained by the defendant upon its premises. Trial by jury resulted in a verdict in favor of defendant and against plaintiff. Judgment entered thereon was affirmed by the appellate court (104 Ill. App. 2d 470), and we have allowed plaintiff's petition for leave to appeal from that decision.

Plaintiff, who was 9½ years old at the time of the occurrence in question, testified that at that time he lived with his parents in the defendant's housing project. During the day of July 14, 1953, he had been playing at the home of a friend, Douglas Almquist, who was about the same age as plaintiff. The Almquist home was also within the defendant's premises. Plaintiff went to his own home for supper, and after finishing his meal at about 6:00 P.M. he returned to Almquist's home to continue playing. Almquist's mother gave her son a grocery bag full of papers and instructed him to burn them in a 55-gallon drum, several of which the defendant provided for the burning of tenants' rubbish. Almquist and plaintiff went to the drum, where Almquist deposited the grocery bag and its contents into same and ignited the refuse with a burning piece of paper. Almquist and plaintiff remained near the drum to make sure the fire continued to burn. Plaintiff testified that at this time flames shot out through some aeration holes in the lower portion of the drum and ignited his trousers. He bent over to extinguish the fire on his pantlegs, whereupon the flames spread to his shirt, causing severe burns to his chest, right armpit, and his face. The plaintiff further testified that, while his clothing was on fire, he noticed a five or one-gallon can of some sort near the drum and that an explosion occurred, whereupon he was engulfed in flames. On cross-examination plaintiff admitted that he had stated in his

deposition taken prior to the trial that he couldn't tell whether or not his pantlegs had caught fire. In addition, plaintiff testified on cross-examination that flames from the top of the drum might well have caused his clothes to catch fire. It was further brought out that at the time of the accident plaintiff knew one could get burned by getting close to a fire, and that he personally had burned refuse in a similar drum on more than one occasion prior to the date of the accident.

Samuel Vicaro, a maintenance mechanic at the housing project at the time of the accident, testified that combustible liquids such as gasoline and turpentine were stored in a maintenance shop on the project, and that some of these liquids might have been contained in five-gallon cans. He personally never did place any of these cans into any of the 55-gallon drums, nor did he ever see any of these cans put into the drums. Rather, defendant discarded them by depositing them in a truck which came to the project on a regular basis. Vicaro testified that during his employment at the housing project, he had occasion to see children playing in the playground area in the middle of the project. It is, however, unclear from this record as to whether or not the playground area was near the areas where the various 55-gallon refuse drums were located. Vicaro stated that there were 10 to 12 of these drums located on the project for the use of the tenants. They were topless, about 4 feet in height, and approximately 30 inches in diameter. There were holes drilled in the bottom and in the sides. The holes in the bottom were for drainage purposes and the side holes were drilled in order that refuse would more readily burn therein. Some of the drums were on bricks or blocks, and some rested directly on the ground. Vicaro further testified that he had observed children of the project burn refuse in these drums from time to time. Vicaro did not see the accident in question, nor did any of the other witnesses at the trial except, of course, the plaintiff.

Elmer Freels testified that he had been employed as a maintenance superintendent at the defendant's housing project at the time of the accident. He stated that the 55-gallon drums were provided by the defendant for the burning of papers and other burnable refuse. They were emptied by defendant once per week and sometimes twice a week. Freels also stated that the defendant replaced the drums from time to time as they became weathered. When he observed, on the day after the accident, the drum which he had been told was the one involved in the mishap, he found it to be intact. He also at that time observed a burnt and bent one or two-gallon can near the accident site. There is, however, no evidence in the record specifically relating this can to defendant, or from which it may be clearly determined whether it had contained flammable material, or indeed whether it was in any way a causative agent of plaintiff's injuries.

Further testimony as to the circumstances under which the accident occurred was largely cumulative of that of Vicaro and Freels and accordingly need not be recounted herein.

The first question with which we are concerned is whether the jury's verdict exonerating defendant is a valid verdict inasmuch as it was signed by only the foreman of the jury and was not returned into open court in the presence of all the jurors. The verdict, rather, was delivered, sealed, to the bailiff for transmittal to the court, and by the time it was opened by the court, the jury had been discharged. Plaintiff contends that such verdict is in legal contemplation not a verdict at all and is thus insufficient upon which to predicate a judgment. We disagree. It is to be noted that, prior to the opening of the verdict, counsel for both parties had stipulated as follows: "When jury have agreed on and signed verdict they may deliver same to bailiff and then be excused without order of court. Verdict to be later brought into court by bailiff. Polling of the jury is waived. After

verdict is signed, bailiff or any juror may tell result of verdict to anyone." Under these circumstances, and in the absence of proof in the record that the document returned to the court represented other than the unanimous decision of the jury, we believe, as did the appellate court, that the verdict in this case was adequate and properly made the basis of the trial court's judgment. We reach this conclusion because plaintiff's counsel specifically chose to waive the time-honored safeguard of polling the jury, which would have clearly avoided all doubt as to the jury's collective determination. Having done so, he cannot now complain that the apparent manifestation of the jury's decision is not technically perfect. The test of the validity of a general verdict is whether or not it expresses the intent of the jury so that the trial court can understand it and enter judgment thereon. This court and the appellate court have previously upheld verdicts returned into open court signed by only the jury foreman, (*Chicago City Ry. Co.* v. *Cooney,* 95 Ill. App. 471, affirmed 196 Ill. 466), and we have approved the oral delivery of the verdict into open court by the foreman of the jury (*Powell* v. *Bechtel,* 340 Ill. 330; *Catholic Order of Foresters* v. *Fitz,* 181 Ill. 206; *Griffin* v. *Larned,* 111 Ill. 432; see also Ill. Rev. Stat. 1967, ch. 110, par. 68(1)). While it is true that here, unlike in the foregoing cases, the jury's verdict was not returned in the presence of all the jurors, that safeguard, as we have said, had previously been waived by stipulation of counsel.

Plaintiff further maintains that the trial court erred in denying his motion for a directed verdict on the question of liability at the close of all the evidence and in subsequently denying his motion for judgment notwithstanding the verdict. We again must disagree. While the evidence is clear that the 55-gallon drums were maintained by the defendant for the burning of refuse by the tenants of the project and that children frequently burned material therein, it is also

manifest that the plaintiff was aware of the dangers inherent in remaining close to a fire. Further, the plaintiff's own account of the occurrence is somewhat inconsistent. He testified on direct examination that his trousers initially caught fire from flames shooting out of the holes in the drum. However, on cross-examination he admitted that during his discovery deposition he had stated that he couldn't recall whether or not his pantlegs had been burned, and that his clothes might well have been ignited by flames emanating from the top of the drum. In addition, the testimony as to the proximity of the refuse drum in question to the project playground is not at all clear. There was no showing that the drum in question was inadequate for the use intended or was in any way defective when being used for such purpose. Indeed, a jury would be warranted in finding from the evidence in this case that the drum in question served its purpose in an ordinary manner, and that the only reason that the plaintiff was burned was because he voluntarily remained too close to the fire therein. As we mentioned earlier with regard to the can near the accident site, the evidence does not establish its relation to the plaintiff's injuries.

In seeking to impose liability on defendant as a matter of law, plaintiff relies upon cases such as *Kahn* v. *James Burton Co.*, 5 Ill.2d 614; *Runions* v. *Liberty National Bank*, 15 Ill. App. 2d 538, and *Kleren* v. *Bowman*, 15 Ill. App. 2d 148. In those cases it was held that liability may properly be imposed upon defendants for injuries sustained by children occasioned by either an unintended use of the device or instrumentality in question where such use was foreseeable, or through an intended use thereof where such device or instrumentality might be deemed unduly dangerous, *i.e.*, where the inconvenience of remedying the condition or situation is slight compared to the risk of injury to children. We believe those cases are inapposite here, where a jury

would be warranted in finding from the evidence adduced at the trial that the instrumentality which occasioned the injury did so when being used as intended, functioned no more dangerously than is ordinarily inherent in such use, and was in no way defective. We believe this case is more analogous to *Driscoll* v. *C. Rasmussen Corp.*, 35 Ill.2d 74, 79, where a seven-year-old child was burned when a trash pile maintained by defendant, and paint containers therein, caught fire. In that case we observed that: "The mere fact that this small boy was injured does not authorize a presumption or inference that the trash pile was dangerous or that the contractor was negligent in maintaining it. It is always unfortunate when a child gets injured while playing, but a person who is merely in possession and control of the property cannot be required to indemnify against every possibility of injury thereon. The responsibility for a child's safety lies primarily with its parents, whose duty is to see that his behavior does not involve danger to himself. Others can be held responsible for injuries only if they are at fault under some recognized theory of liability."

In our judgment the foregoing remarks are particularly appropriate here, where the plaintiff clearly was aware of the danger inherent in the proximity to fire and it cannot be said as a matter of law that the drum in question was a dangerous instrumentality, having regard to its intended use. See also: *Pitts* v. *Basile*, 35 Ill.2d 49.

We cannot say that a housing authority which, as here, maintains refuse drums for the convenience of its tenants in burning trash is as a matter of law liable to a 9½-year-old child of average intelligence who is burned by a fire in such drum. To hold as plaintiff would have us do in this case would in our judgment be tantamount to the unwarranted judicial imposition of the requirement that defendant absolutely insure the safety of its tenants' children. As we stated in *Pedrick* v. *Peoria and Eastern R.R. Co.*, 37

Ill.2d 494, 510: "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." After having carefully read the entire record in this case, we believe that the trial judge was manifestly correct in refusing to direct a verdict in favor of the plaintiff and in subsequently declining to enter judgment for the plaintiff notwithstanding the verdict.

Plaintiff finally contends that the trial court did not adequately instruct the jury on the use of the verdict forms and further maintains that certain remarks of defense counsel during closing argument were so inflammatory and prejudicial as to warrant reversal and remandment of the cause for a new trial. There is no showing in the record that plaintiff requested further instruction to the jury on the use of the verdict forms, and one cannot complain that an instruction was not given where he does not show that the court was requested to give such instruction and refused to do so. (*Paulick* v. *National Bank of Republic,* 279 Ill. App. 160.) As for the alleged remarks of counsel, none appear in the record before us except by *ex parte* affidavit of plaintiff's counsel in support of his post-trial motion, and we have consistently held that matters not properly in the record will not be considered on review by this court. *Department of Public Works and Buildings* v. *Bloomer,* 28 Ill.2d 267, 275; *Department of Public Works and Buildings* v. *Anastoplo,* 14 Ill.2d 216, 222-23.

The judgment of the appellate court was correct and accordingly is affirmed.

*Judgment affirmed.*