JOHN WALL, a minor, by Kenneth Wall, his father and next friend, *et al.*, Plaintiffs-Appellants, *v.* LOIS McGAVOCK, Defendant-Appellee.

(No. 70-173;

Second District—March 9, 1971.

Morgan, Brittain, Ketcham & Dondanville, of Elgin, for appellants.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The court directed a verdict for the defendant at the close of plaintiffs' case in an injury suit brought on behalf of a three year old child charging the defendant with negligence.

In this appeal on behalf of the minor, it is contended that there was sufficient evidence of the defendant's negligence to have gone to the jury. The argument is based upon the theory that a "babysitter" owes a duty to a child entrusted to her care to provide reasonable supervision for forseeable injuries.

In October of 1965, Mrs. Wall engaged her friend and neighbor Mrs. McGavock to care for John Wall in the McGavock home while Mrs. Wall was away at her work. The agreed payment for the defendant's services was $2.00 per day. The only testimony as to the charged injury to the child's eye was adduced from the adverse examination of the defendant under Section 60 of the Civil Practice Act. Mrs. McGavock testified that on April 4th, 1966, John Wall was in her custody under the usual arrangement and was playing with the three McGavock boys who were 2, 3 and 4 years old respectively. The children were playing in the "T.V." room with "Tinker Toys" which included sticks of various lengths. The set had been purchased by Mrs. McGavock and was in a closet accessible to the children. The boys were using the "Tinker Toys" with her knowledge. She checked on the boys from time to time. The longest interval would have been possibly twenty minutes, but they would come to her also in the interval. She said she knew that the boys "rough-housed" occasionally and she had, on previous occasions, cautioned her 4 year old, who was the biggest of the children, not to be so rough with the younger boys. About 3:30 in the afternoon, while Mrs. McGavock was in the breezeway hanging wash, she testified that she heard John Wall cry out, met him as he came toward the kitchen, and observed that his left eye was severely cut and was bleeding. She saw blood on the floor in the T.V. room which she assumed marked the place of the accident and also found a six to eight inch Tinker Toy stick there.

Mrs. McGavock further testified that the minor plaintiff told her, shortly after the accident, that he fell on a Tinker Toy. She was then asked whether she had talked to the boy about the accident in the next day or so:

"Q All right; and did you inquire of him again how the accident happened?

A Yes.

Q Did he indicate to you how it happened?

A Yes.

Q And did that indicate any rough housing?

A Some, yes.

Q And rough housing on the part of your son, Jeff?

A Between Jeff and Johnnie, yes.

Q As a matter of fact, they were fighting over a tinker toy when the accident happened?

A Yes."

Defendant argues that, based upon these facts, the court properly directed a verdict. She contends that one should not be held to the duty of foreseeing injuries from a commonly used toy; and that there was a complete failure of proof as to how the injury was received and in what manner the conduct of the defendant was its cause.

■■ There was no direct testimony as to the occurrence. The testimony of defendant as to what the plaintiff child told her, was hearsay testimony of a particularly untrustworthy nature since it was general in terms and revealed two versions which appeared to be conflicting, one of falling on the toy and the other connected with unspecified "roughhousing" over it. Liability may not be based upon speculation or conjecture and may not become a jury issue unless the material allegations upon which liability is based are supported by either direct evidence or circumstantial evidence from which inferences of the material facts clearly preponderate. Here, contrary facts may be inferred from the same evidence with equal certainty so that we may not say that a case has been made out by circumstantial evidence. (*Tiffin v. The Great A. & P. Tea Co.* (1959), 18 Ill.2d 48, 60, 61; *McKinney v. Illinois Power Co.* (1960), 26 Ill.App.2d 193, 203, 204.) The apparent basis of the trial court's decision was that there was insufficient evidence of defendant's negligence to show that any act or omission on her part was the *cause* of the injury. We agree. The evidence offered in plaintiffs' case here could only have invited speculation and conjecture as to the cause of plaintiff's injury and defendant's responsibility for it. In these circumstances the verdict was properly directed in favor of the defendant, applying the standards set forth in *Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill.2d 494.

Additionally, we would sustain the judgment upon the basis that defendant had no duty to either keep the Tinker Toys away from the minor plaintiff, or to remain in the room at all times to supervise the children at play. Plaintiff argues in this regard that the evidence was sufficient to show that a reasonably prudent person should have foreseen that injuries of the general type shown might occur, and that this raised questions for the jury of defendant's due care in making the toys avail-

234

able to the young children, and the sufficiency of her supervision under all the circumstances. We do not agree.

Every risk which is foreseeable does not necessarily create a legal duty. The likelihood of the injury, the magnitude of the burden of guarding against it and the desirability of placing the burden against a defendant, must also be considered in the determination by the court of the preliminary question whether a duty exists before the jury may apply standards of negligent conduct and determine proximate cause. (*Lance v. Senior* (1967), 36 Ill.2d 516, 518; *Lorang v. Heinz* (1969), 108 Ill.App.2d 451, 455.) Under the proof offered in plaintiffs' case and considering that Tinker Toys are not dangerous instrumentalities in themselves (see *Maramba v. Neuman* (1967), 82 Ill.App.2d 95, 99 noting that far more dangerous toys are not even so categorized), we cannot agree that the law imposed a duty upon Mrs. McGavock to do anything more than the undisputed evidence shows that she did to guard against the risk that a three year old boy playing with commonplace toys in the company of other children near the same age would be injured. To hold otherwise would require the imposition of a duty of constant surveillance, or the forbidding of the use of an almost endless list of commonplace toys to young children. We cannot say that the payment to the defendant of the nominal amount of $2.00 a day (which included lunch) is a special reason for imposing so great a duty of guarding against the almost unlimited number of potential sources of injuries to a child.

The court properly directed a verdict in favor of defendant and we affirm the judgment below.

Judgment affirmed.

T. MORAN, P. J., and ABRAHAMSON, J., concur.