DONALD JONESCUE, as Parent and Guardian of DENISE JONESCUE, Plaintiff-Appellant, *v.* JEWEL HOME SHOPPING SERVICE, Defendant-Appellee.

(No. 72-132; )

Second District—December 28, 1973.

*Rehearing denied February 13, 1974.*

340

Donald Mock, of Itasca, for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Donald Jonescue, as parent and guardian of Denise Jonescue, his minor daughter, sued the defendant, Jewel Home Shopping Service, for injuries allegedly sustained by the child when she drank from a bottle of Jetco HD All Purpose Cleaner manufactured and sold by the defendant. Plaintiff's theory of recovery, set forth in a single count complaint which contained elements of both strict tort liability and negligence, was that defendant negligently failed to warn of the dangers of or to properly label an otherwise nondefective product, thereby creating an inherently dangerous condition resulting in injury when ingested by the child. The court directed a verdict for defendant at the close of the plaintiff's case, and plaintiff appeals.

Diane Mary Jonescue, the child's mother, testified that on November 9, 1968, her 18-month old daughter Denise drank part of the contents of a Jetco bottle she kept in a vanity under the bathroom sink. Mrs. Jonescue found the baby spitting bubbles, and shortly thereafter throwing up. She immediately took Denise to the office of Dr. Bruno Beinoris. Dr. Beinoris ordered that Denise be taken to the hospital because he did not know what ingredients the Jetco cleaner contained. Upon arrival at the hospital the baby was vomiting violently, with blood in the vomit.

The hospital physician first gave Denise syrup of Ipecac which induces vomiting, and after noticing the blood gave her Charcoal and Maalox. The defendant was then called and about ten minutes after the call the technical director of Jewel Laboratories gave the hospital the toxicity data and formula of the cleaner.

Denise was kept in the hospital from November 9th until her discharge on November 21st. Her stomach was never pumped, and she was given solid foods during her hospital stay. Dr. Beinoris' diagnosis was hemor-

rhagic gastritis caused by ingestion of the fluid; together with bronchial pneumonia which developed during her hospital stay. He said that the pneumonia "could have been" caused by the ingestion of the cleaner, because sometimes a "toxic" substance can get in the lungs. He testified that on the day after the child's admission she had no fever and appeared asymptomatic except for a foul smelling stool, but on the following day she was coughing slightly and X-rays showed definite pneumonitis. Antibiotic and empycillin, together with cough syrup, were prescribed and by November 17th the cough had subsided. On November 18th, the child ran a slight fever and her X-rays showed that the pneumonia was healed but that she still had bronchial inflammation. The fever subsided on the 20th, and she was completely asymptomatic on the 21st of November when she was discharged. It was the doctor's opinion that Denise did not suffer any permanent injury.

On cross-examination, Dr. Beinoris said that some of the medicine the child was given, by getting into her lungs, could also have been the cause of the pneumonia. He had no idea how much of the cleaner the child consumed, and did not know the composition of defendant's product. He said that ingesting an excessive amount of a nonpoisonous product could cause illness.

Stanley Czepial, an employee of defendant holding a degree in chemistry, was called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act. He testified that Jetco All Purpose Cleaner contains 36.2% water, 10% sodium xylene sulphonate, 33.3% tetro potassium pyrophosphate, 5.8% sodium alkyl benzene sulphonate, 3.4% ammonium salt of linear alcohol, 1% coconut acid diathanolamine, .1% formalin, and 10% water, soft. Batches of the cleaner manufactured on the same day as that of the one in question had pH's from 9.9 to 10.12. He said that a product with a pH of 8 or 9 would not be corrosive; that some natural foods eaten daily have pH's of 8 or 9, with soup having a pH of 9½.

Paul E. Tack, an employee of the defendant company, also holding a chemistry degree, called as an adverse witness under section 60 testified that Jetco has an LD (Lethal Dosage) of 50, "the amount of the product that when tested by the laboratory to determine its toxicity, the amount that will cause 50 percent of the test animals to expire." He further testified that the product contained enough alkaline substance that it could have a caustic effect on human tissue on contact. On cross-examination, evidence was adduced to show that the product was considered to be non-toxic orally under the Federal Hazardous Substance Labeling Act.

A bottle of Jetco cleaner was submitted in evidence. The bottle contained the labels:

**Jetco**
**HD**
All Purpose Cleaner
*HEAVY DUTY*

Removes grease, food stains, finger-prints, hair oils, crayon, pencil marks, and other common household stains from:

- FLOORS
- WALLS
- PAINTED SURFACES
- TILE
- LINOLEUM
- WOODWORK
- KITCHEN APPLIANCES
- VINYL UPHOLSTERY
- OUTDOOR FURNITURE

DIRECTIONS: Dilute ¼ cup (or less) in one gallon water. For really tough spots, such as heel marks, use full strength.

GUARANTEE: Your money back with a smile if you are not satisfied with this item.

Manufactured by JEWEL COMPANIES, INC., Barrington, Illinois 60010

■■ Mrs. Jonescue testified that she kept cleaning products such as Drano, Lestoil and Pine Sol on a very high shelf out of the reach of children. Defendant's product was kept in the vanity where she had toilet paper, towels, creme rinses and brushes.

Plaintiff contends that he presented sufficient evidence from which a jury could conclude that Jetco HD Cleaner is a toxic, corrosive detergent; and that defendant's failure to warn constituted a basis for recovery against the manufacturer. Defendant argues that the plaintiff failed to prove the cleaner inherently dangerous, and that no duty or need to warn existed because the danger of illness from ingestion was apparent.

Although plaintiff's complaint consisted of only one count, it contained allegations for pleading both strict tort liability and negligence. In their briefs and in oral argument the parties have assumed both theories apply. In the particular circumstances of this case which turns on the absence of warnings on an otherwise nondefective product, the differences between strict liability and negligence become immaterial. (See *Anderson v. Klix Chemical Co.* (1970), 256 Or. 199, 201, 472 P.2d 806, 808-9.) If resolved in defendant's favor, the crucial issue, whether the

**BIODEGRADABLE**

Jetco

CONCENTRATED

All Purpose Cleaner

*HEAVY DUTY 64 FL. OZ. (2 QT.)

danger was patent or apparent so that there was no duty to warn, would bar recovery under either theory. *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill.App.3d 906, 913, 915-917.

■■ Whether the Jetco Cleaner is defective or hazardous when used for its intended use is not in issue. Mrs. Jonescue testified that she had used the product in various ways and that it performed satisfactorily. A manufacturer may be liable, however, for damage caused by a nonintended use of a product if the use is one which may be reasonably foreseen. (*Hardman v. Helene Curtis Industries, Inc.* (1964), 48 Ill.App.2d 42, 63-64; *Spruill v. Boyle-Midway, Inc.* (4th Cir. 1962), 308 F.2d 79, 83-84; *Haberly v. Reardon Company* (1958), 319 S.W.2d 859, 863.) If a product is not reasonably safe for a use that may be expected to be made of it and no adequate warning is given of its dangerous propensities, the manufacturer or seller of such a product may be liable even though the

product itself is faultlessly made. *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1967), 86 Ill.App.2d 315, 325, *aff'd* 42 Ill.2d 339.

■■ Defendant reasonably could anticipate that in the process of use for its intended purpose in the home environment Jetco All Purpose Cleaner might be placed in close proximity to children. A jury therefore could properly find it foreseeable that at some point in time a child would drink from a bottle of the cleaner so placed. *Spruill v. Boyle-Midway, Inc.* (4th Cir. 1962), 308 F.2d 79, 84.

■■ Defendant contends that Jetco All Purpose Cleaner was not shown to be toxic, although in its brief defendant seems to concede the cleaner could be harmful or cause illness if ingested. Defendant relies on the conclusion of its report submitted to the United States Poison Control Center, which stated that the Jetco cleaner is nontoxic orally under the Federal Hazardous Substances Labeling Act. (15 U.S.C.A., section 1261 *et seq.*) Although compliance with a relevant statutory scheme declaring whether defendant must warn of the dangers of its product is some evidence that the Jetco cleaner is not harmful or toxic, such compliance is not conclusive or controlling in defining defendant's common law liability for failure to warn. *Hulke v. International Manufacturing Co.* (1957), 14 Ill.App.2d 5, 43; *Rumsey v. Freeway Manor Minimax* (Tex. App. 1968), 423 S.W.2d 387, 394.

■■ The narrow question before us is whether sufficient evidence existed from which a jury could find that Jetco All Purpose Cleaner was inherently or unreasonably dangerous because it lacked a warning. Defendant seems to make a distinction for purposes of directing a verdict between toxic and dangerous. The evidence presented did show that as a direct or indirect result of ingesting the Jetco cleaner Denise Jonescue suffered hemorrhagic gastritis and pneumonia resulting in hospitalization. Whether these consequences are sufficiently dangerous seems at the very least to be a question for the jury to decide.

Defendant's primary argument is that even if Jetco cleaner could cause sickness if ingested, considering the nature and intended uses of the cleaner, such resulting sickness is an expectable consequence and constitutes a patent danger so that no duty to warn exists.

■■ The law does not require every product to be accident-proof, incapable of causing harm or accompanied by a warning against any injury which may ensue from a mishap in the use of the product. (*Jamieson v. Woodward & Lothrop* (D.C. Cir. 1957), 247 F.2d 23, 26.) The purpose of a warning is to apprise a party of a danger of which he is not aware, and thus enable him to protect himself against it. When a danger is fully obvious and generally appreciated, nothing of value is added by a warning. (247 F.2d 23, 32.) Thus there is no duty to warn

against patent dangers. *Fanning v. LeMay* (1967), 38 Ill.2d 209, 212 (shoes are slippery when wet); *Pitts v. Basile* (1966), 35 Ill.2d 49, 52 (darts should not be thrown in the direction of anyone in vicinity); *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill.App.3d 906, 912-913 (without pressure plywood boards will be thrown off cutting knives mounted on high-speed rotating spindle); *Bender v. William Cooper & Nephews, Inc.* (1944), 323 Ill.App. 96 (undiluted pine-oil, labeled as a disinfectant, may cause serious harm if splashed into the eye); *Ward v. Hobart Manufacturing Co.*, (5th Cir. 1971), 450 F.2d 1176, 1188; *Jamieson v. Woodward & Lothrop* (D.C. Cir. 1957), 247 F.2d 23, 26-29, 32; *Haberly v. Reardon Co.* (Mo. 1958), 319 S.W.2d 859, 867; Restatement (Second) of Torts § 402A, comment j, § 388, comment k; 63 Am. Jur.2d *Products Liability* §§ 50, 131.

■■ Jetco HD Cleaner was marketed as a heavy duty cleaner. Plaintiff's wife was well-acquainted with its uses for cleaning around the house. The labels on defendant's product show that it is an all-purpose cleaner, that it is heavy duty, that it is concentrated, that normal use requires a dilution ratio of 1:64, that it removes grease, food stains, fingerprints, hair oil, crayon and pencil marks from different hard surfaces, and can be used to remove such things as heel marks. From these facts the normal expectation could be that if ingested by a small child, the Jetco Cleaner could cause injury or sickness such as that suffered by Denise Jonescue.

■■ On the other hand, there is some evidence from which a jury could infer that users of the Jetco Cleaner might not recognize illness or injury to the extent of that suffered by Denise Jonescue as an obvious consequence of ingesting the cleaner. (*Cf. Williams v. Brown Manufacturing Co.* (1970), 45 Ill.2d 418, 427.) The cleaner was contained in a white, plastic bottle with a red, white, blue and aqua label, lending to it a colorful and harmless appearance. (See *Spruill v. Boyle-Midway, Inc.*, (4th Cir. 1962), 308 F.2d 79, 82, 84.) The labels include a guarantee which states "money back with a smile if not satisfied with this item"; and a Mary Dunbar approval, which states that the product was "tested and approved by Jewel Homemakers Institute". These portions of the label might lead a consumer to believe Jetco cleaner is safer to have around the home than other similar cleaners. The labels on the cleaner specify no list of ingredients or warning which would indicate to purchasers and users that Jetco cleaner contained something orally harmful. In this day and age the absence of any warning accompanying the Jetco cleaner might lull users into expecting the cleaner to be relatively harmless.

Besides conflicting inferences which can be drawn from the labeling of defendant's product, differing conclusions might be reached about

the obviousness of the danger in light of the seriousness of Denise Jonescue's injuries. The degree of care to be exercised by the manufacturer is proportionate to the seriousness of the consequences which are reasonably to be anticipated from the conduct in question. (*Maize v. Atlantic Refining Co.* (1945), 352 Pa. 51, 56, 41 A.2d 850, 853; See also *Lewis v. Stran-Steel Corp.* (1972), 6 Ill.App.3d 142, 148.) Similarly, the more serious the consequences resulting from the foreseeable but unintended use of a product such as the Jetco cleaner involved here, the less expected and hence the less obvious those conseqences would appear to the user. See *Haberly v. Reardon Co.* (Mo. 1958), 319 S.W.2d 859, 867 (immediate blindness might not have been expected when defendant's cement paint got into plaintiff's eye, although some pain should have been expected).

■ ■ In the instant case plaintiff's daughter suffered hemorrhagic gastritis and pneumonia resulting in a 12-day hospital stay. Whether these injuries are so serious that the average mother might not expect them to result from a small child ingesting the Jetco cleaner as labeled presents a question more appropriately decided by a jury rather than by a court as a matter of law. *Cf. Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill.2d 339, 343-344.

■ ■ Even slight doubts about the obviousness of the consequences resulting from a child ingesting defendant's cleaner should require the case to be submitted to a jury. The knowledge, experience, and ability to recognize harmful consequences may vary greatly among the large numbers of those foreseeable users who would bring defendant's product into their home environment. Although many may recognize as an obvious danger the painful illness which could result to a child ingesting a heavy duty cleaner such as defendant's, others may not so recognize such danger without a clearly worded and plainly visible warning. (*Cf. Williams v. Brown Manufacturing Co.* (1968), 93 Ill.App.2d 334, 349, *rev'd on other grounds* 45 Ill.2d 418.) In the instant case the addition of appropriate words of warning on the Jetco label would have constituted only a slight burden of precaution for defendant to have undertaken. In the interests of protecting the unsuspecting, the policy should be to require the manufacturer to assume such a small added burden of precaution. *Cf. Lance v. Senior* (1967), 36 Ill.2d 516, 518; *Wall v. McGavock* (1971), 132 Ill.App.2d 231, 234; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1967), 86 Ill.App.2d 315, 325-326, *aff'd* 42 Ill.2d 339.

■ ■ Since we believe the record in the present case discloses doubts about whether Denise Jonescue's injuries should have been recognized as an obvious consequence of her ingesting Jetco All Purpose Cleaner,

348

we must reverse the judgment of the trial court below directing a verdict for defendant at the close of plaintiff's evidence.

The judgment appealed from accordingly is reversed and the case remanded for a new trial.

Reversed and remanded.

CRAVEN and T. MORAN, JJ., concur.