DONALD R. RICHELMAN, Guardian of the Estate of Mark Richelman, a Minor, Plaintiff-Appellee, *v.* KEWANEE MACHINERY AND CONVEYOR COMPANY, Defendant-Appellant.

Fifth District   No. 76-461

Opinion filed April 11, 1978.

JONES, J., dissenting.

Howard Boman, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellant.

C. E. Heiligenstein, of Belleville, and Donald R. Mitchell, of Carbondale, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment in the amount of $75,000 entered by the circuit court of St. Clair County after a jury found the issues in favor of the plaintiff in a suit based upon strict liability and negligence.

On November 17, 1972, Mark Richelman, then 2 years 9 months of age, suffered a traumatic amputation of his right leg when he became entangled in a grain auger located in his grandfather's farm yard. In response to special interrogatories the jury indicated that its verdict was founded upon both theories of the case.

In 1965 the Kewanee Machinery and Conveyor Company designed what became known as the Model 260 Auger to be used, *inter alia*, to convey grain from a hopper located on the ground to a storage silo. The auger consists of a 41-foot metal tube, or sleeve, within which revolves a screw-like mechanism extending from a 25-foot high storage bin down to a gravity hopper which sits on the ground. Prior to 1965 the defendant had employed a safety guard consisting of longitudinal bars spaced 3⅜" apart which surrounded the screw portion of the auger. For purposes of clarity this guard design shall be referred to as the "parallel guard" for, as explained at trial, the safety device in this design is parallel to the screw itself. In an effort to enhance sales, the defendant conducted tests of various potential guard designs in 1965 with a goal of approximating the amount of grain intake obtained when no guard was used. Three basic designs were tested: (1) variations of the parallel guard then in use; (2) a vertical or cross-type guard and its variations; and (3) a screen-type guard comprised of 4" x 4" gauge wire. The vertical type guard, consisting of three ⅜" diameter rods spaced 4⅝" apart, was subsequently adopted and in 1967 manufactured on the Model 260 Auger. The minor plaintiff's grandfather, Arthur Richelman, purchased the Kewanee Model 260 Grain Auger in 1967 from an implement dealer located in Steeleville, Illinois.

In 1972 plaintiff's parents, Donald and Elaine Richelman, were living with their minor son in a mobile home located approximately 30 feet west of the farmhouse where plaintiff's grandparents resided. Donald's father worked on the farm owned and operated by his father, Arthur Richelman. On the day of the accident Arthur Richelman had been shelling corn in a nearby field while Donald Richelman transported the shelled corn to the tractor-powered auger which then conveyed the kernels into the storage bin. Elaine Richelman, her minor son (the plaintiff), and his cousin, aged 3½ years, had gone shopping in a nearby town. They returned about 1 p.m. and Mrs. Richelman put the children down for their customary nap. Upon learning that the children were napping, Donald Richelman started the auger and proceeded to feed some cattle approximately 50 feet away from the operating machinery. As the children were unable to sleep, Mrs. Richelman dressed them and took them to their grandmother's house nearby. This activity went unnoticed by Donald Richelman. While Mrs. Richelman spoke with her mother-in-law in the living room, the children played on an enclosed porch. Less than five minutes later both parents heard Mark's screams and rushed to the grain elevator in time to pull their son from the hopper. The minor plaintiff's right leg had been amputated by the grain auger. However, no one had witnessed precisely how the young child had become entangled in the machinery.

There was a great deal of evidence adduced at trial concerning the methodology employed in testing the various guard designs. James Suhr, who had been instrumental as a design engineer in the employ of Kewanee during the 1965 tests was called as a witness for the plaintiff. He testified that in designing the guards he considered only the safety of the implement operator; the safety of a bystander was not even a factor. He explained that he anticipated that anyone, male or female, of high school age could be an operator of the auger. Nevertheless, in determining the width of the gap between the guard bars, Suhr measured only the width of his own size 12-B shoe and accordingly spaced the bars 4⅝″ apart. This decision was made with full knowledge that men and women of high school age generally have narrower feet than his own. Suhr admitted that he did not contemplate an operator tripping so that another part of the body could become engaged in the auger. Finally, he stated that although the engineers were fully cognizant that augers are generally located in a farmhouse complex where small children often play, their safety was not a consideration in designing the auger guard. In short, the guard was designed for the safety of "the majority of users." The study concluded that the screen-type guard was safest and that the parallel type guard which was replaced in 1967 was safer than the vertical type guard used in the 1967 design involved in this accident.

Under examination by defense counsel, Suhr explained that despite its use as a guard for other types of farm machinery, the screen-type device was not widely used on grain augers in 1967. Redesign having been, in his opinion, motivated by clogging difficulties with the parallel guard, Suhr testified that he felt the added safety features of the screen design would induce a greater occurrence of clogging and thus an increased incidence of dangerous contacts with the machine.

Suhr's study was strongly criticized by Dr. Carl Larson, associate professor and part-time assistant dean in the Engineering College of the University of Illinois. Dr. Larson testified that the wire screen concept, which was in his opinion safer than either of the other two designs under consideration in 1965, was at that time commercially available. In fact, the defendant itself offered for purchase in 1965 a tilting-style hopper with a screen-type guard. Larson estimated that the difference in the cost of producing the screen type guard and the vertical guard ultimately chosen was nominal. In any case, Larson unequivocally stated that the longitudinal or parallel guard previously used would afford greater protection to anyone coming into contact with the auger than the vertical style on the Model 260 Auger. In support of its feasibility, he pointed out that in 1970 Kewanee adopted the preferred screen design on this model auger. Larson stated that the practice of determining the extent of the gap between the guard bars by measuring one's own shoe width was definitely not an accepted method of design engineering. In Larson's opinion the Model 260 Grain Auger was an unreasonably dangerous product when manufactured in 1967, since anyone with a narrower than 4⅝" shoe could get caught in the auger.

Dr. Virgil Flanigan, associate professor of mechanical engineering at the University of Missouri, testified on behalf of defendant that in his opinion the vertical-type guard device employed on the Model 260 Auger was not unreasonably dangerous in 1965. Dr. Flanigan did acknowledge, however, that the gravity hopper involved in this case was situated as low to the ground as the tilting hopper manufactured in 1967 with a screen-type cover. Although he agreed that the screen-style guard is the safest design, he stated that the parallel and the vertical type guards tested in 1965 were equally safe. Finally, Dr. Flanigan conceded that when designing the machine for safety, persons other than the operator should be considered.

The only issue for review is whether Mark Richelman's injury was foreseeable as a matter of law under the rationale of *Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1.

The *Winnett* case involved an injury to a four-year old child who was, in the court's own language, "permitted to approach an operating farm forage wagon or * * * permitted to place her fingers in or on the holes in

its moving screen." (57 Ill. 2d 7, 13.) In rejecting the usual categorization of plaintiffs, the court adopted the following test of liability:

"In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." (57 Ill. 2d 7, 11.)

The court continued:

"Whether the plaintiff here is an individual who is entitled to the protections afforded by the concepts of strict tort liability depends upon whether it can be fairly said that her conduct in placing her fingers in the moving screen or belt of the forage wagon was reasonably foreseeable. A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' (*Mieher v. Brown*, 54 Ill. 2d 539, 544.) Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) 57 Ill. 2d 7, 12-13.

We find it helpful to review those cases which have relied upon *Winnett* in holding that a particular injury was not reasonably foreseeable. In *Wenzell v. MTD Products, Inc.*, 32 Ill. App. 3d 279, 336 N.E.2d 125, the four-year-old plaintiff was injured when a gasoline-powered lawn mower driven by a seven-year-old came into contact with plaintiff's foot. The First District denied liability commenting that the "mower was being used by a group of children virtually as a toy." (32 Ill. App. 3d 279, 291.) In our opinion, these cases indicate nothing more than a reluctance by the judiciary to hold a manufacturer liable when children are allowed to play with dangerous objects. The acts precipitating injury in both cases were basically intentional. Similarly, *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 343 N.E.2d 465, represents a situation where an electrical contractor was denied recovery for injuries received while constructing a field tower in close proximity to a power line. In this case, however, there is no positive evidence that the minor plaintiff was actively playing with or attempting to operate the grain auger. Thus, the jury could have inferred that Mark inadvertently tripped or fell into the open hopper.

Moreover, the undisputed evidence disclosed that most adults could have been similarly injured because of the $4\frac{5}{8}''$ gap between the bars of the vertical-type auger guard in this case; whereas, the indication in the *Winnett* pleading cited in the supreme court opinion was that the holes in the conveyor belt were only of a sufficient size to admit the fingers of a small child. The fact that the individual injured is a child should not

preclude recovery where an adult, albeit one with a narrower foot than that of the design engineer, could likewise have sustained injury. Thus, the real question is not so much whether the defendant could "objectively expect" that Mark Richelman would not take a nap on the day in question but instead would venture outdoors and become entangled in the grain auger, but rather whether the defendant could "objectively expect" that if one with a smaller than 4⅝" shoe width were to trip or fall near the auger he could be injured because of the inadequate safety guard.

A pre-*Winnett* case lends great insight on the issue of foreseeability. In *Jonescue v. Jewel Home Shopping Service*, 16 Ill. App. 3d 339, 306 N.E.2d 312, *appeal denied*, 56 Ill. 2d 582, the court held that the manufacturer of an all-purpose cleanser was strictly liable for unintended uses of its product which could reasonably be foreseen. There an 18-month-old child suffered injury when she drank a portion of the cleanser. In *Buehler v. Whalen*, 41 Ill. App. 3d 446, 355 N.E.2d 99, we remarked:

> "A manufacturer's duty to design a product which is reasonably fit for its intended use encompasses foreseeable ancillary consequences of normal use * * *." (41 Ill. App. 3d 446, 454.)

Similarly, in *Court v. Grzelinski*, 48 Ill. App. 3d 716, 363 N.E.2d 12, the First District reversed the dismissal of a products liability action brought by a fireman who was injured by the explosion of a gasoline tank of an automobile which had caught fire. There the court declared:

> "It has been established that a manufacturer has a duty to design its vehicle so that those foreseeably exposed are not subjected to an unreasonable risk of harm. (*Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 F.2d 213.)" (48 Ill. App. 3d 716, 721.)

These cases demonstrate that the concept of foreseeability is indeed a broader inquiry than merely the intention of the manufacturer.

A detailed recitation of the evidence regarding foreseeability would serve no purpose here. We need only repeat that questions of foreseeability as well as questions whether a product is defective or unreasonably dangerous are ordinarily for the jury to resolve. (*Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1; *Martinet v. International Harvester Co.*, 53 Ill. App. 3d 213, 368 N.E.2d 496; *Wright v. Massey-Harris, Inc.*, 68 Ill. App. 2d 70, 215 N.E.2d 465.) While the supreme court in *Winnett* felt that the facts there in issue were such that nonliability could be found as a matter of law, we regard the evidence in this case as presenting factual questions upon which reasonable men might differ and thus believe that it was properly submitted to the jury. (*Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74.) We cannot say as a matter of law that injury to the plaintiff in this case was not objectively reasonable to expect. For reasons stated earlier in this opinion, we do not find the *Winnett* case and its progeny controlling on this issue.

The appellant's brief, based solely upon the *Winnett* decision, raises no issue as to the propriety of the jury's special findings concerning its negligence. In light of the circumstances of the present case we feel the decision of the triers of fact should be upheld.

For the foregoing reasons the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS, J., concurs.

Mr. JUSTICE JONES, dissenting:

The majority recognizes the validity of the "foreseeability" rule for products liability cases as expressed in *Winnett v. Winnett* but yet it refuses to follow it upon a set of facts strikingly similar to those of the *Winnett* case. It also concludes that the machine involved in the injury in this case was an unreasonably dangerous one. I disagree with the majority upon both facets of their conclusion, believing that upon the facts present in this case the trial court should have entered judgment for defendant notwithstanding the verdict. I accordingly respectfully dissent.

It would be difficult to find a case factually more similar to *Winnett v. Winnett*, 57 Ill. 2d 7, 13, 310 N.E.2d 1, 5, than this one and the decision here should consequently be controlled by *Winnett*. There, the court concluded:

> "While in retrospect it can be asserted that the manufacturer of the forage wagon should have foreseen that the unfortunate event in this case might conceivably occur, we do not believe its occurrence was objectively reasonable to expect. It cannot, in our judgment, fairly be said that a manufacturer should reasonably foresee that a four-year-old child will be permitted to approach an operating farm forage wagon or that the child will be permitted to place her fingers in or on the holes in its moving screen."

We need only change the age of the child to two years and nine months and the type of machine to a grain auger and the similarity of this case to *Winnett* is complete.

The majority ignores the similarity of the facts, and the basis of the decision in *Winnett*, and seeks to distinguish this case from *Winnett* upon the grounds that there was "no positive evidence that the minor plaintiff was actively playing with or attempting to operate the grain auger." When the basis of the *Winnett* decision is considered the distinction advanced by the majority is irrelevant; it would not be objectively reasonable for the manufacturer to expect plaintiff to be injured by the auger either while playing with it or by accidentally falling into it. As the

court stated in *Gille v. Winnebago County Housing Authority*, 44 Ill. 2d 419, 426, 255 N.E.2d 904, 908: "The responsibility for a child's safety lies primarily with its parents, whose duty is to see that his behavior does not involve danger to himself. Others can be held responsible for injuries only if they are at fault under some recognized theory of liability."

It is likewise irrelevant that an adult might be injured by the machine in question. We are to consider only whether the defendant could reasonably foresee that the plaintiff in question would be injured by the auger. Foreseeability of injury in general simply does not enter into a determination of this particular case. The only question can be whether this particular plaintiff's injury was reasonably foreseeable. The *Winnett* case held that it was not and we should follow it.

It is frequently said (*e.g., Winnett v. Winnett*) that the question of foreseeability of injury is one of fact, and that is doubtless true for the very definition of the word denotes such. Even so, it does not, and cannot, follow that in all instances where a question of foreseeability arises that the matter must be determined only by a jury as the trier of questions of fact. The adoption of such a position ignores the role of the court, present in any action upon products liability as well as in negligence actions. When a question of foreseeability arises, as it has in this case, the court must in the first instance determine whether there is sufficient evidence to raise an issue of fact. If only one inference can be drawn no issue of fact is presented and the court should hold either for plaintiff or defendant as a matter of law. That was the course followed by the supreme court in the *Winnett* case. If, however, more than one inference can be drawn from the evidence, then the court will submit the matter to the jury for determination.

Here, as in *Winnett*, there is but one inference to be drawn from the evidence and the court should therefore have directed a verdict for defendant at the close of all the evidence, holding as a matter of law that it was not foreseeable by defendant that plaintiff would be injured in the manner in which the injury in fact occurred.

With regard to the character of the auger as an unreasonably dangerous machine it should be noted that the dangerousness did not result from a flaw in its manufacture, nor in its failure to conform to the intended design, nor from an inadvertent design error. It was a dangerous machine because of a conscious choice in design. The auger was being used in the manner for which it was designed and was functioning in its intended manner. A safety barrier or grid that would prevent any injury to any persons, including wandering minor children, would be manifestly less efficient as a device to auger grain into a bin. The dangerousness of the auger in use here may well be attributable to its usefulness. Its dangerousness is generic to its function. It in fact appears in the record

here that another auger equipped for greater protection potential was available to plaintiff's grandfather. For reasons not apparent the particular machine in question was purchased instead.

The risk of harm from the auger is readily apparent and the design aspect of the machine that makes it dangerous may in fact play a role in the user's decision to purchase it. This factor is important since it bears heavily upon the question whether the auger is "unreasonably" dangerous, for liability is imposed only if the product is "unreasonably dangerous." (*Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182.) Illinois courts have not adopted a rule imposing absolute liability upon manufacturers for injuries occasioned by their products. This is particularly true in instances where the dangerousness of the machine or instrumentality is readily apparent. Our supreme court declared in *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 466-67, 343 N.E.2d 465, 471:

> "Reviewing the facts alleged in the complaint, we do not find it was objectively reasonable for Hy-Gain, Rohn and Lurtz to expect a user of their products to be injured in the manner in which plaintiff was injured. As plaintiff admits, the danger of electricity is common knowledge.
>
> . * * *
>
> Although comment *j* to section 402A of the Restatement (Second) of Torts recognizes that a failure to warn can make a product unreasonably dangerous, *we conclude that a duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious.*" (Emphasis added.)

The policy is apparent and expressed in the *Genaust* case (exposed electric power transmission lines); *Winnett v. Winnett* (forage wagon); *Fanning v. LeMay*, 38 Ill. 2d 209, 230 N.E.2d 182 (shoes slippery when wet); *Pitts v. Basile*, 35 Ill. 2d 49, 219 N.E.2d 472 (toy dart); *Hancock v. Luetgert*, 40 Ill. App. 3d 808, 353 N.E.2d 165 (sickle); *Hagerman v. National Food Stores, Inc.*, 5 Ill. App. 3d 439, 283 N.E.2d 321 (vending machine with glass globe which broke when plaintiff fell into it); *Maramba v. Neuman*, 82 Ill. App. 2d 95, 227 N.E.2d 80 (boomerang); and many more. Under the guidance of these cases the trial court should have found, as a matter of law, that the auger, its dangerousness readily apparent and generic to its function, was not an unreasonably dangerous machine and that it was not objectively reasonable for defendant to expect that an injury would be incurred by the minor plaintiff, a nonuser bystander. Having so found the court should have directed a verdict for defendant at the close of all the evidence or entered judgment for defendant notwithstanding the verdict.