**Orlando Cicale, Plaintiff-Appellant, v. Karen S. Aronson, Defendant-Appellee.**

**Gen. No. 52,492.**

First District.
August 1, 1969.

325

Piacenti, Cifelli & Creswell, of Chicago Heights (Conrad W. Sanders, of counsel), for appellant.

Caryl P. Bonotto, John W. Kearns, Jr., and Kirkland, Ellis, Hodson, Chaffetz and Masters, of Chicago, for appellee.

MORAN, J.

Plaintiff appeals from a judgment of the Circuit Court of Cook County wherein the jury returned a verdict in favor of the defendant.

This case involves an accident in which the defendant's car struck the plaintiff while he was working on a highway repair crew. The plaintiff, a cement laborer, at the time of the occurrence in question was working as a member of a crew which was making repairs to the southbound lanes of pavement on the Eden's Expressway in Chicago, which, at this point consists of three southbound lanes. At some point north of the scene of the accident there was a series of traffic cones and barricades which funnelled the southbound traffic into the most easterly southbound lane while repairs were being made to the other two lanes.

The plaintiff testified that the crew was doing patchwork, i. e., removing sections of bad concrete and replacing them, in the middle of the southbound lane. On the day in question he had been working with an air hammer in breaking up the old concrete and after the large pieces were removed, he used an air hose to blow out the remaining debris prior to the pouring. The size of

the patch area was the width of the lane and perhaps five feet in length, and that to the north of him there was a continuous string of barricades for at least two hundred feet. From the point where the traffic funnelled into one lane, the barricades were on the west edge of that lane and extended up to the patch area and into one easterly lane of traffic.

The plaintiff testified that when he was struck, he was inside the line of barricades, facing North, bent over using the air hose, standing with one foot in the hole and one foot on the pavement, and that although he heard several cars pass, he did not actually see the defendant's car before it struck him.

The defendant testified that she was sixteen years of age and had received her driver's license approximately six weeks before the accident. She had been driving fifty-five miles per hour and when she reached the construction area she reduced her speed to fifteen to twenty miles per hour and although she saw workmen in the area, she did not see plaintiff until after the impact.

Charles Inglimo, a civil engineer, who was working as an engineer for the State of Illinois on the Eden's Expressway, was the only remaining witness. He testified on behalf of the defendant that the patch area was approximately twelve feet by twelve feet and that the barricades extended one or two feet into the traffic lane. Just before the accident, he was standing north of the patch, in the center of the center lane. The plaintiff was standing in line with the barricades on the pavement and was facing the patch with his back to the traffic when he ran out of slack in the air hose. He then jerked the hose and this threw him out of the line of barricades and into the path of the defendant's car. He estimated that the defendant was going ten miles per hour and then admitted that in a statement given shortly after the accident he had stated that she was proceeding at twenty-

five to thirty-five miles per hour. He also admitted that the right side of her car might have been as close as six inches from the base of the barricades.

The jury returned a verdict in favor of the defendant and against the plaintiff. The court entered judgment on the verdict and the plaintiff appeals.

Plaintiff first contends that the trial court erred in not granting his motion for a directed verdict upon the issues of defendant's negligence and plaintiff's freedom from contributory negligence. He argues that although the defendant had a lane of traffic eleven and one-half feet wide in which to drive her car, which was only six and one-half feet wide, she drove her car through the lane with the right side having only approximately six inches clearance from the construction work. He also argues that she knew men were working there and that she struck the plaintiff without ever seeing him.

In support of this contention the plaintiff cites the case of Leoni v. McMillan, 287 Ill App 579, 5 NE2d 742, wherein the court stated that drivers of vehicles must take notice of men working on the highway and exercise care not to injure them, and a workman has a right to assume that this will be done. Id. at 590. In Leoni the plaintiff was working on a road repair crew and as the defendant approached the area in his vehicle, he saw the plaintiff crossing the street carrying a piece of pipe and deliver it to the other side. The plaintiff then turned to re-cross the road, and was struck. The Appellate Court held that the defendant should have known that after turning around, the plaintiff would be at the very edge of the road and in spite of this, the defendant continued to hug the right edge of the road with his right wheels within one foot of the edge, even though the road was eighteen to twenty feet wide and entirely free of other traffic. The court held that the work of the plaintiff gave him not only the right, but compelled him to be where he was at the time he was struck.

■■ We do not believe that the factual situation in Leoni is the same as in the instant case. The whole question seems to be whether the plaintiff was in the area where he should have been, i. e., behind the barricades, or whether he stepped or stumbled out into the line of traffic where he had no right to be, and would the defendant have had any duty to anticipate his presence there. In Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504, the Supreme Court said:

". . . In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Id. at 510.

This court said in Hitt v. Langel, 93 Ill App2d 386, 236 NE2d 118:

". . . The general rule is that negligence and contributory negligence are questions of fact for the jury, and so long as a question remains whether either party has performed his legal duty or has observed that degree of care imposed upon him by the law, and the determination of that question involves weighing and the consideration of the evidence, the question must be submitted as one of fact. (Cases cited.) Even where the facts are admitted or undisputed but where a difference of opinion as to the inference that may legitimately be drawn from them exist, the questions of negligence and contributory negligence ought to be submitted to the jury." Id. at 396.

■■ Applying these rules to the evidence presented, we believe that the trial court properly submitted these issues to the jury.

In the alternative, the plaintiff contends that a new trial should be granted. Several contentions are stated as

a basis for a new trial. We shall first consider three of them together, since they are connected. The plaintiff asserts that (1) it was error to permit the defendant's attorney to read or comment on the plaintiff's answers to interrogatories, (2) the court erred in giving the defendant's instruction No. 2 (IPI No. 5.01) pertaining to the failure to call witnesses and (3) that the defendant's attorney made a prejudicial argument to the jury on the application of that instruction.

The plaintiff was called as an adverse witness under section 60 of the Civil Practice Act and defense counsel then requested that the reporter mark defendant's interrogatories and the plaintiff's answers to them as Defendant's Exhibits. The defendant's attorney made reference to questions numbers one and two and then read: "Q. What is the identity and present or last known address . . . ?" Plaintiff's attorney objected and the defendant's attorney stated that he would not go into it any further. He then asked: "Q. Who was Guido Camelli?" Plaintiff's attorney again objected and the court asked for the grounds. There was no answer and the questioning continued. The plaintiff was asked if Camelli was a fellow employee on the day of the occurrence and he replied, "Yes." He then was asked who James B. Kelly was. The plaintiff's attorney objected as being irrelevant and the defendant's attorney replied that they were answers to interrogatories.

A discussion was held outside the presence of the jury and the plaintiff's attorney stated that defense counsel was reading from the plaintiff's answers to interrogatories and that this is improper. His reasoning was:

> "I say that the law does not give him any right to disclose the names or addresses of persons whom we have listed in our interrogatories, so that the jury can jump to the conclusion that we are required to call them in."

The court then asked for a case supporting the point. None was furnished and the objection was overruled.

In the presence of the jury the plaintiff then stated that he signed the answers to interrogatories and that he listed Robert Inglimo as a witness.

In Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205, the defendant contended that the trial court erred in refusing to allow defendant's counsel to read into the record the answer to an interrogatory that the plaintiff had crossed certain railroad tracks twice daily for 21 years. The trial court held that the answer was not impeaching and refused to allow it to be read because it was not impeaching but really corroborative of his familiarity with the area. The Appellate Court held that this was not reversible error.

In Bunton the defendant also objected to the court's refusal to allow it to read an answer of the plaintiff which gave the names and addresses of all the witnesses to the accident in his possession or under his control. The answer listed four names, and only three were called to testify. The plaintiff's attorney objected because the witness was no more under plaintiff's control than defendant's, and both could have subpoenaed the witness. The plaintiff's attorney said: "I don't think the fact that we are required to list the people we know that have some knowledge of the occurrence . . . should . . . put the plaintiff in the position that he has . . . an obligation to call them." The Appellate Court said: "We are of the opinion that the court properly sustained plaintiff's objection in this regard." Id. at 327.

 The defendant contends that there were only two questions asked by the defendant's attorney in which he stated that he was referring to the answers to interrogatories and that the plaintiff's attorney failed to object to them and therefore waived the point. As stated previously, out of the presence of the jury, the

plaintiff's attorney did object to the referrals to the interrogatories. We believe that counsel's objection was properly stated and that, having been overruled, it was not necessary that the objections be repeated.

The defendant further contends that even if he had read the plaintiff's answers to interrogatories into evidence, there is no rule prohibiting such action. Reference is made to Illinois Supreme Court Rule 213(f) which provides that answers to interrogatories may be used to the same extent as a discovery deposition and that Rule 212(a) states that a discovery deposition may be used, among other things, as an admission made by a party. The defendant's attorney states that his purpose was to obtain the admission from the plaintiff that he knew of witnesses to the accident.

In Tolman v. Weiboldt Stores, Inc., 38 Ill2d 519, 233 NE2d 33, the Supreme Court considered the issue of when answers to interrogatories are admissible. In that case the interrogatory asked whether there was any injury on the escalator during the five-year period when it was operated by the defendant or its assignor. The defendant answered that it had no actual knowledge of any injury but had heard that there had been injuries when it was operated by the assignor. In the succeeding answers the defendant then listed the names of the people that had been injured, according to information it had received. At the trial these answers were admitted into evidence and the plaintiff received a verdict. On appeal, the Supreme Court said that answers to interrogatories may be used only for impeachment or as an admission, or, if otherwise admissible, as an exception to the hearsay rule. The court held that the answers were not admissions of the prior injuries since the answers had denied any knowledge of prior accidents and thus were not admissions that it had knowledge of a dangerous condition. The court then said that it was error for the trial court to admit the answers.

■ ■ An admission, to be admissible, must be relevant to the issues. Gillson v. Gulf, M. & O. R. Co., 94 Ill App2d 170, 236 NE2d 113. Although, in the present action the plaintiff admitted in the answers that there were witnesses, this fact is of no relevancy unless it is shown that they were under the plaintiff's control. See Bunton, supra. Accordingly, we hold that the plaintiff's answers to interrogatories did not constitute an admission which was relevant and therefore should not have been admitted into evidence.

Plaintiff also contends that the giving of defendant's instruction No. 2 greatly compounded the trial court's error in allowing the answers to plaintiff's interrogatories to be admitted into evidence. The instruction was IPI No. 5.01 and reads:

> "If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:
>
> > "1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.
> >
> > "2. The witness was not equally available to an adverse party.
> >
> > "3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.
> >
> > "4. No reasonable excuse for the failure has been shown."

In his closing argument to the jury, defendant's counsel said, "Now you will hear a juror's instruction that states that if you start mumbling about a witness and you don't bring that witness in, it's fair to presume that if you did, that witness would testify against you."

333

In our opinion the error the trial court committed in allowing the persons listed in plaintiff's answers to interrogatories to be read into evidence was compounded by the giving of the foregoing instruction and by defense counsel's argument, for the jury might well have inferred that since the plaintiff did not bring in these persons he was suppressing evidence.

Plaintiff also claims error in the giving of the instruction when coupled with defense counsel's argument that he had a duty to produce a person who had taken a statement from the defendant. When IPI Instruction No. 5.01 was offered, defense counsel argued that one of the reasons the instruction should be given was that when plaintiff had produced what was purported to be a statement from the defendant, the defendant said, "I don't remember giving a statement. I believe that was my signature on the second page, but I don't believe that I ever gave a statement." Plaintiff's attorney answered that he had no obligation to produce the person who took the statement from defendant because defendant admitted making the statement.

In his closing argument, defense counsel said:

> "MR. BONNOTTO: . . . And secondly, he said to Karen look at this statement here that you signed sometime back when you were about sixteen years old. She looked at it and said that looks like my signature on the second page. There were two pages of the two loosely (sic) pages. I don't remember giving this statement. It looks like my signature but I don't remember giving it. Well, that is easy to clear up. Bring in your mystery writer, bring in the one that wrote this mysterious statement. We will stick him on the witness stand and ask him questions and we will find out how and when this mysterious statement came into existence.
>
> "MR. SANDERS: Object.

"THE COURT: Overruled.

"MR. BONNOTTO: I didn't see the mystery writer, nor did we know any more about the statement than the day you did when he confronted her with it. Again you will hear the instruction from the Court to bring in your witness because it is presumed that they will testify against you if you don't."

■ There was no duty on plaintiff to produce the person who took the statement from defendant, because defendant admitted that she stated in the statement that "I was nearing the end of the work area when I heard a thump, looked up and saw a workman at the side, right front fender of my car with his back to me." Since this was the only portion of the statement that defendant was asked about, and since she admitted making that statement, it is difficult to see why there would be any reason to call the person who took the statement. Therefore, it was error to instruct and argue on the absence of this supposed witness.

We do not think it necessary to consider other contentions of error made by plaintiff.

For the foregoing reasons, this case is reversed and remanded for a new trial.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.