BOBBIE LEE FINK, Plaintiff-Appellee, *v.* CHRYSLER MOTORS CORPORATION, INC., Defendant-Appellant.

(No. 72-186;

Fifth District—January 25, 1974.

McGlynn & McGlynn, of East St. Louis (Charles M. Whealon and Joseph B. McGlynn, Jr., of counsel), for appellant.

William W. Schooley, of Granite City (Lawrence T. Hartman, of counsel), for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff, Bobbie Lee Fink, brought this action against the defendant, Chrysler Motors Corporation, Inc., for personal injuries that the plaintiff sustained when his automobile, which he was driving, collided with another automobile driven by a third party. Trial was held in the circuit court of Madison County. The cause was tried before a jury and at the conclusion of the trial the jury returned a verdict in favor of the plaintiff in the amount of $75,000. Judgment was entered on the verdict and from that judgment this appeal is brought.

The evidence at the trial was that the plaintiff, Bobbie Lee Fink, was involved in an automobile collision with Robert Bast on February 1, 1966. The collision occurred at about 7:30 A.M. at which time it was still dark and both automobiles had their lights on. The weather was cold and snowing, with an accumulation of snow on the road as a result of approximately four inches of snow having fallen. The plaintiff was driving in a northerly direction on Ill. Rt. 111, a two-lane paved highway in Madison County. Bast was driving in a southerly direction along the same route. The snow was packed on the road and ruts had been made in the snow by the earlier traffic. The center line dividing the north and southbound traffic was covered with snow. The plaintiff had come over a viaduct and was on a downgrade traveling about twenty to thirty miles an hour and near the bottom of the incline he saw the Bast vehicle approaching the plaintiff's vehicle positioned about halfway in the plaintiff's traffic lane. The collision occurred when the two vehicles' left front fenders met. The two left front fenders were crushed and mangled. The vehicles continued to sideswipe one another and turn. The Bast vehicle had been traveling approximately thirty-five miles per hour. The plaintiff was using his seat belt. He remembered seeing the top side of the hood rising up at an angle and coming through the front windshield striking him in the left eye. He also testified that he remembered that the right side of the hood was up in the air when the left side of the hood came through and struck him in the eye. The left eye has been removed and the plaintiff now wears an artificial eye.

The defendant's original design of the weldments between the cowling and the hood required four spot welds. In November, 1964, the defendant added two additional one-half inch fillet welds to the design as a permanent modification. These changes were in effect at the time Chrysler manufactured the plaintiff's automobile.

The defendant expects a minimum of 500 pounds tensile strength per spot weld and 500 pounds tensile strength per half inch of arc weld which results in a minimum design tensile strength of 3000 pounds between the hinge bracket and the cowling. The plaintiff's automobile, a 1965 Dodge, was purchased new by the plaintiff about ten to 11 months prior to the accident and no damage had been done to the vehicle prior to the collision that prompted this lawsuit.

The plaintiff's complaint is based upon strict liability in tort which included the following allegation: "The welds were of defective quality and quantity such as to not hold upon impact in a collision which could be reasonably anticipated by the defendant."

There were three expert witnesses that testified concerning this allegation. The plaintiff called as an adverse witness under section 60 of the Civil Practice Act, Mr. John Haynes. Mr. Haynes, who was at the time of trial employed by the defendant as the supervisor in the computer agent design and development group in the stress analysis department, testified in part, that he had examined the actual hood hinge brackets, hood and cowling. From his examination of all the exhibits and the parts of the vehicle, the speed of the automobiles and the place of contact between the automobiles, he stated that the lesser numbers of welds and the different types of welds as opposed to the design shown in the specification of the defendant was not a contributory cause to the hood coming loose and striking the plaintiff in the eye. He further testified that he found in measuring the welds on the plaintiff's vehicles that there was more fusion present than that for which the specifications called; thus it really did not matter how much welding was done because the force of the impact was so severe and occurred in such a position with respect to the structural members of the car that the bracket would have bent and torn loose and the hood would have come through the windshield whether or not the designed welds had been performed.

Russell Nemer was then called by the plaintiff. Mr. Nemer, a mechanical engineer, never worked in the automobile industry. He examined the cowling and hood. He examined the welds on the hinge assembly brackets and the hinge bracket and the defendant's specifications as to the number and size of the welds that should be located on the cowling. He found that the number of welds that he actually discovered were less than the number specified by the defendant and were also of a different

type and size. In his opinion there was less joining capacity in the plaintiff's vehicle than welds to the specifications would have produced. He further testified that this, in turn, could have been a contributory factor which could or might have caused or contributed to cause the hood to come loose and strike the plaintiff. He testified that the evidence of the quality and quantity of the welds coupled with other evidence caused an unreasonably hazardous and dangerous condition to the plaintiff.

The defendant presented testimony of Mr. John Paul Shaughnessy, who was employed by the defendant as a welding specialist. He agreed with Mr. Haynes that although there were less welds than called for in the specifications that the capacity of the welds that were actually made to the defendant's vehicle exceeded the design tensile strength capacity by some 17%. He estimated that a force of approximately twice the designed capacity would have been necessary to cause the damage that was done to the hood and the attachments.

The defendant first contends that the allegations of the plaintiff's amended complaint taken as a whole do not set forth a legally recognizable duty by the defendant to the plaintiff. In support of this assertion we are cited the cases of *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612, 210 N.E.2d 182 and *Evans v. General Motors Corp.* (7th Cir. 1966), 359 F.2d 822. We are also directed by the plaintiff to the recent Illinois Supreme Court case, *Mieher v. Brown* (1973), 54 Ill.2d 539, 301 N.E.2d 307.

The defendant asserts that the *Suvada* case holds that the defendant is not an insurer against injuries to all persons using an automobile manufactured by the defendant. We agree with this holding. However, this is not the contention of the plaintiff as his basis of recovery. The plaintiff's amended complaint sets forth a cause of action based upon strict liability.

The defendant's citation of *Larson v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 45, and *Evans v. General Motors Corp.* (7th Cir. 1966), 359 F.2d 822, *cert. denied,* 385 U.S. 836, 17 L.Ed.2d 70, 87 S.Ct. 83, are of no assistance to its position. The *Larson* and *Evans* cases involved the duties incident to the design of a vehicle and not as in the instant case wherein the plaintiff asserts that there is defective construction. The plaintiff herein does not contend that the design was defective, but that the design specification was not followed and complied with in the vehicle's manufacture. Likewise, the recent case of *Mieher v. Brown,* 54 Ill.2d 539, 301 N.E.2d 307, is also distinguishable from the present case. As the court stated in *Mieher* at page 543:

"The question in our case involves the duty of the manufac-

turer to *design* a vehicle with which it is safe to collide." (Emphasis ours.)

The court in *Mieher,* in discussing the concept of duty, states:

"It is apparent that the concept of duty in negligence cases is very involved, complex and indeed nebulous. The term is so ill defined and its boundaries so indistinct, that one commentator has observed: 'There is a duty if the court says there is a duty.' And he concluded that the court's pronouncement often reflects the policy and social requirements of the time and community. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15; see also Prosser, Law of Torts (4th ed. 1971) 325-326." 54 Ill.2d 545.

▮▮ It is our opinion, and we so hold, that it was the defendant's duty to manufacture its product as to not be unreasonably dangerous to the ultimate user. A question of fact was properly presented to the jury as to whether defendant's failure to meet its own design specifications constituted a defective condition that was unreasonably dangerous to the plaintiff.

Next the defendant asserts that the plaintiff failed to prove that the defect alleged in the amended complaint was the proximate cause of the injury. The defendant cites three cases: *Suvada, supra; Briske v. Village of Burnham,* 379 Ill. 193, 39 N.E.2d 976; *Carr v. Lee J. Behl Hotel Corp.,* 321 Ill.App. 432, 53 N.E.2d 295.

In *Suvada,* in which it was said at page 623:

"The plaintiffs must prove that their injury or damage resulted from a condition of the product   *   *   *."

the question of the adequacy of allegations of proximate cause were resolved in favor of the plaintiff. In the latter two cited cases the acts complained of were held to have only created a condition, and were not acts concurrent with the acts which caused the injuries to the plaintiffs.

▮▮ The issue of proximate cause will always arise in the so-called enhanced injury cases. In our opinion to deny liability as a matter of law as to that issue is unjustified.

"There seems to be no rational basis for splitting the event of the collision and allowing recovery only where the condition of the automobile caused the accident; the accident and injury are all part of the same happening in which defendant's failure to use reasonable care caused harm." 80 Harv. L. R. 688, at 689 (1967).

The words of this quote were used by courts in *Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 495, at 502; *Bremier v. Volkswagen of America, Inc.* (D.C.D.C. 1972) 340 F.Supp. 949, at 952; *Mickle v. Blackmon* (1969), 252 S.C. 202, at 232, 166 S.E.2d 173, at 187, and we

consider that principal applicable regardless of the conceptual approach the particular court adopts to the causation issue. Whether a manufacturer's action in design or construction is insulated or replaced as the proximate cause of enhanced injury by the event of the accident, or conversely, whether the accident constitutes an intervening or superceding cause of injury, depends upon the foreseeability of that accident to the manufacturer at the time he adopted the design or made the construction which enhanced injury once that accident occurred. At this point the distinction between the issue of "duty" and "proximate cause" becomes fuzzy.

The Court in *Passwaters v. General Motors Corp.* (8th Cir. 1972), 454 F.2d 1270, indicated a preference for leaving questions of foreseeability generally, whether phrased in terms of "duty" or "proximate cause", to juries. Foreseeability said the court, basically becomes a matter of interpreting events in terms of one's own perception of the common affairs of life; "foreseeability" is really just another way of saying what is or is not "reasonable" to expect. The traditional legal maxim, the court said, has always been that courts should not interpose their judgment for that of a jury just because the court feels its judgment is the "more reasonable" one. Also see *Mieher, supra.*

The defendant concludes asserting that the plaintiff must prove that the hood hinges and brackets were dangerous because they failed to perform in the manner reasonably to be expected in light of their nature and intended function. The defendant asserts that because the hood operated correctly for the period that the automobile was owned by the plaintiff (some 10-11 months) that there was no evidence to show that the hood was defective. A review of the evidence of the plaintiff reveals that in the opinion of plaintiff's expert witness the defect in the weldment could or might have contributed to cause the hood to come loose and strike the plaintiff.

■■ *Dunham v. Vaughn & Bushnell Manufacturing Co.*, 42 Ill.2d 339, 247 N.E.2d 401 states, "Those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." The hood is to function not only to allow the engine compartment to be exposed while open but also to remain closed during the time when the engine compartment is not to be open. The jury concluded that the product failed in a manner reasonably to be expected by the defendant.

The evidence produced by plaintiff raised questions of fact to be resolved by the jury, as to whether defendant had breached its duty to manufacture a product which was not unreasonably dangerous to the

ultimate user, as well as whether the breach of that duty was the proximate cause of plaintiff's injury. From the evidence the jury concluded that the product was unreasonably dangerous and that that condition was the proximate cause of plaintiff's injury.

The judgment of the trial court is affirmed.

CREBS and JONES, JJ., concur.