MARIE BUEHLER *et al.*, Plaintiffs-Appellees, *v.* DEBRA GOODMAN WHALEN *et al.*, Defendants-Appellants.

Fifth District    No. 74-212

Opinion filed August 24, 1976.

448

Allen D. Churchill, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellant Ford Motor Company.

Ray Freeark, of Freeark & Harvey, P. C., of Belleville, for appellant Debra Goodman Whalen.

Hodson & Pennock and Crain, Hall & Cooksey, both of Centralia, and C. E. Heiligenstein, of Belleville, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This cause of action was brought by the plaintiffs, Marie Buehler, Gerrell Forth, and the First National Bank of Belleville as guardian of the estates of Richard Buehler and Michael Buehler, minors, for burn injuries which were sustained following an automobile collision wherein all the plaintiffs, except Gerrell Forth, were passengers in a vehicle manufactured by defendant Ford Motor Company (hereafter Ford). The vehicle burst into flames upon being struck in the left rear by defendant, Debra Goodman Whalen (hereafter Whalen). Gerrell Forth was burned in effecting a rescue of the passengers of the impacted car. Plaintiffs alleged strict liability in tort for a defective design against Ford and negligence against Whalen.

From the judgment entered by the circuit court of St. Clair County on jury verdicts in favor of the plaintiffs, each defendant appeals.

The issues presented by Ford for review are: that the plaintiffs' case against Ford was pleaded and tried on an erroneous theory; that as a matter of law it owed the plaintiffs no duty to design an automobile that would not have burned them under the facts of this case; that the plaintiffs failed to sustain their burden of proof that any design defect proximately caused their injuries; that the jury verdicts against Ford were against the manifest weight of the evidence; and that certain prejudicial trial errors, which will later be enumerated, mandate a new trial.

The issues presented by Whalen are: that as a matter of law her

negligence had not proximately caused the plaintiffs' burns; that the trial court erred in instructing the jury on the issues of proximate cause and damages; and that the trial court erred in failing to enter a judgment against Ford as a sanction for its failure to comply with a discovery order.

On January 3, 1971, at approximately 4:20 p.m., the Rudolph Buehler family was returning to their home in their automobile, a 1966 Ford Fairlane sedan. They stopped at a gas station in Carlyle, Illinois, and had the fuel tank filled to within two or three inches from the top of the gas tank's filler spout. After the gas cap was secured to the filler neck, they then proceeded homeward, by traveling south on Illinois Route 127 until they came to their driveway, which intersects the highway. Route 127 is a two-lane highway which runs in a north-south direction; at that time the posted speed limit was 65 miles per hour and the road surface was wet from a recent shower. The Buehler residence was east of the highway and the collision occurred as they were making a left turn from the highway onto their driveway.

As Rudolph Buehler, the driver, approached his driveway he put his left turn signal on about 300-400 yards in front of it. He reduced his speed to 10-15 miles per hour and ultimately to three to five miles per hour. A line of five cars formed behind the Buehler auto. The last car in the line was that of Whalen. She entered the north-bound lane and proceeded to pass all the cars in the line.

Buehler had made a 30° to 40° angle left turn and his auto was one-half to two-thirds onto the driveway upon being struck by the Whalen vehicle. Whalen testified that she was two car lengths behind Buehler when she became aware of his intention to turn. She estimated her speed as 65 miles per hour. She hit her brakes and started to pump them. She tried to miss the Buehler auto by swerving right, back into the south-bound lane. The left front of Whalen's auto struck the left rear of the Buehler car. Plaintiff Gerrell Forth, who was driving one of the cars in line behind the Buehlers, estimated that the impact speed of Whalen's car was 30 miles per hour. Upon impact, fire was immediately seen by occurrence witnesses inside the passenger compartment of the Buehler auto and coming out of the center of the back bumper. The trunk lid was closed and the windows were rolled up at this time. Mrs. Marie Buehler, one of the plaintiffs, who was riding in the front seat, smelled gasoline upon impact and saw flames engulf the back seat area where her niece and sons were riding.

After impact the Buehler auto spun into a ditch bordering the highway and it came to a rest approximately 35 feet south of the driveway; it was lying on its right side and pointing southward. The windows had not broken. Plaintiff Gerrell Forth was the first person to approach the Buehler auto. With the aid of others who arrived, he righted the auto back onto its wheels. He then helped the passengers out of the car. From the

time of the impact to the time the last living person left the burning auto, only 45-60 seconds had elapsed. Gerrell Forth was burned while helping Michael Buehler out of the rear door and into the water in the ditch. Due to the intense fire he was unable to rescue the Buehler's niece in time. He testified that he only saw fire in the interior of the auto. Several of the firemen who arrived at the scene thought that the fire was of a gasoline origin. It was stipulated by the parties that all of plaintiffs' injuries were burns and there was testimony to the effect that these burns were of a gasoline origin.

The vehicle driven by the Buehlers was a 1966 Ford Fairlane. This vehicle was one of several Ford cars that, since 1960, had been equipped with a flange mounted fuel tank. The flange mounted tank is different from strap mounted tanks used on other cars in that the top of the flange mounted tank serves as the floor of the trunk whereas the strap mounted tank is placed beneath the floor of the trunk and is therefore separated from the trunk compartment. The flange mounted tank is also screwed into place and it is held rigidly to the car structure whereas the strap mounted tank is held by metal bands which allow it to be displaced to some extent under stress.

The tank's nonflexible gas filler spout runs through the luggage compartment to a license plate bracket above the bumper. The flange of the tank is about two and one-half inches from the bumper while the rear of the tank itself is four inches from the bumper.

The flange mounted tank was not used in American cars prior to 1960. In that year Ford began using that type of tank in some of its cars. General Motors and Chrysler stayed with the strap mounted tank. Since 1970 Ford changed back to strap mounted tanks for all its automobiles.

In the 1966 Ford Fairlane, the only shield separating the trunk compartment, where the fuel tank and filler spout are located, from the passenger compartment, is a fiberboard panel and the rear seat padding. It was undisputed that neither of these materials significantly limit the passage of fire.

After the collision, the gas cap to the Buehler auto was found near the scene of the impact. The ears to the cap, which secure it to the filler spout, were missing. Similar ears were found inside the Buehler's fuel tank. The filler spout was found to be no longer extending through the opening in the license bracket area, but was instead below the bumper or about flush with it.

Plaintiffs' expert witness, Paul O'Shea, testified on the basis of viewing the impacted auto and a crash test he conducted. O'Shea believed that a firewall isolating the passenger compartment from the trunk would have provided sufficient time to allow an escape from the burning vehicle. But the fiberboard panel in the 1966 Ford Fairlane did not seal the passenger

452

compartment. He testified that 50 percent of all collisions are rear-end collisions, and that one-half percent of all collisions result in fire. O'Shea was of the opinion that the collision in question was a rear-end collision with an angle of impact of 30°-35° and at an impact speed of 35 miles per hour. The crash test demonstrated that on a rear-end impact the filler spout is displaced into the trunk and he concluded that the gas cap could have come off on impact.

Plaintiffs' expert witness, William Eddie, was of the opinion that the escape of gasoline was due to the force created by the sudden configuration change of the fuel tank and that the force of the gasoline broke the gas cap off.

Defendant Whalen's expert, Derwyn Severy, corroborated the testimony of the plaintiffs' experts. In his opinion the propinquity of the fuel tank to the rear of the car, the location of the filler spout in the trunk and the lack of a sufficient barrier between the passenger compartment and the fuel system exposed the passengers to fire and were defects. In his view, upon impact the filler spout moved into the trunk while stripping the gas cap off and fuel was atomized and spewn into the passenger compartment. This was ignited by sparks from the impact. In his opinion a firewall would have substantially reduced or prevented the plaintiffs' injuries. He testified that a firewall could have been added to the 1966 Ford Fairlane at a cost of $1 and one-half hour of labor time. Prior to the collision, Severy had recommended to the industry that such a firewall be added.

Ford's expert witness, Gilford Gorker, testified that 70 percent of all collisions are frontal and five or six percent are rear-end impacts. Side impacts constitute an even lower percentage of over-all collisions. In his opinion the Buehler collision was primarily a side impact and that the gas cap had remained on the filler spout. He believed that the fire in this collision came from outside of the vehicle and that no fuel had entered the trunk compartment. He estimated the impact speed was 45 miles per hour and he denied that it was possible to build a firewall at a cheap cost.

The testimony of Ford's experts, Ralph Barnett and John Kennedy, corroborated parts of Gorker's testimony although Barnett placed the impact speed around 30 miles per hour. On the basis of a test he conducted, Kennedy testified that fire could be transmitted from the exterior to the passenger compartment within 35 seconds.

■■ Ford first contends that the plaintiffs' amended pleadings sought recovery from Ford on an erroneous theory of strict liability in tort for a negligent design. Citing *Mieher v. Brown*, 3 Ill. App. 3d 802, 278 N.E.2d 869, *rev'd on other grounds*, 54 Ill. 2d 539, 301 N.E.2d 307, Ford concludes that the amended complaint failed to state a cause of action for strict liability.

Though there is no cause of action of strict liability in tort for a *negligent* design; there is a cause of action of strict liability in tort for a *defective* design. (*Wright v. Massey-Harris, Inc.*, 68 Ill. App. 2d 70, 215 N.E.2d 465; *Allen v. Kewanee Machinery & Conveyor Co.*, 23 Ill. App. 3d 158, 318 N.E.2d 696; *Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 F.2d 213.) The plaintiffs' amended complaint alleged that certain specified design defects made the Buehler automobile unreasonably dangerous, that these design defects existed when the auto left Ford's control, and that one or more of these design defects proximately caused the plaintiffs' injuries.

We find that the amended complaint properly alleged the essential elements of a theory of strict liability in tort for a defective design. *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182; *Hepler v. Ford Motor Co.*, 27 Ill. App. 3d 508, 327 N.E.2d 101.

Ford further contends that under the "extraordinary collision facts" of the case at bar it had no duty to design its 1966 Ford Fairlane so as to prevent the burn injuries suffered by the plaintiffs.

In the *Mieher* case the plaintiff's decedent sustained fatal injuries when her automobile ran under the rear of a truck and the truck bed penetrated the windshield of the car which she was driving. The plaintiff alleged the defendant had negligently designed the truck in that it did not attach to the rear of the truck a bumper, fender or shield thus making it unsafe to collide into it. Our Supreme Court examined the amended complaint under common law negligence principles and found the controlling issue to be one of duty—"whether the defendant and the decedent stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the decedent * * *." (54 Ill. 2d 539, 541, 301 N.E.2d 307, 308.) The court held that:

> "Although the injury complained of may have been, in a sense, foreseeable, we do not consider that the alleged defective design created an unreasonable danger or an unreasonable risk of injury. In the words of section 435(2) of the Restatement (Second) of Torts, 'looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm' for which recovery is now sought. Public policy and the social requirements do not require that a duty be placed upon the manufacturer of this truck to design his vehicle so as to prevent injuries from the extraordinary occurrences of this case." 54 Ill. 2d 539, 545, 301 N.E.2d 307, 310. See also *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617.

The instant appeal, like *Mieher*, involves a so-called "second collision" issue in that the first collision was not caused by the alleged design defect,

but by the alleged negligence of Whalen. The second collision occurred when the plaintiffs were allegedly injured because of an unreasonably dangerous condition resulting from the design of the vehicle. (See *Fink v. Chrysler Motors Corp.*, 16 Ill. App. 3d 886, 308 N.E.2d 838.) But *Mieher* is factually distinguished from the present case since in that case the question involved was "the duty of the manufacturer to design a vehicle with which it is safe to collide" whereas in the case at bar the question involves "the duty of the manufacturer to design a vehicle in which it was safe to ride." 54 Ill. 2d 539, 543, 301 N.E.2d 307, 309.

■■ For the reasons enunciated in *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182, strict liability is imposed against a manufacturer in cases involving products, where a defective condition makes them unreasonably dangerous to a user. Defectively designed products are unreasonably dangerous because they fail to perform in a manner reasonably to be expected in light of their nature and intended functions. *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, 247 N.E.2d 401; *Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1; *Stewart v. Von Solbrig Hospital, Inc.*, 24 Ill. App. 3d 599, 321 N.E.2d 428.

In *Winnett v. Winnett*, the court held that:

> "In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended *or for which it is reasonably foreseeable that it may be used.*" (Emphasis added.) (57 Ill. 2d 7, 11.)

The court went on to state:

> "Foreseeability means that which is *objectively reasonable* to expect, not merely what might conceivably occur." 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 4-5.

A manufacturer's duty to design a product which is reasonably fit for its intended use encompasses foreseeable ancillary consequences of normal use which in the case of automobiles includes collisions. (*Larsen v. General Motors Corp.* (8th Cir. 1968), 391 F.2d 495; *Turcotts v. Ford Motor Co.* (1st Cir. 1974, 494 F.2d 173; *Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 F.2d 213; *Ford Motor Co. v. Zahn* (8th Cir. 1959), 265 F.2d 729; *Dyson v. General Motors Corp.* (E.D.Pa. 1969), 298 F.Supp. 1064; see Prosser, Law of Torts §96 (4th ed. 1971).) The environment in which an automobile is used must be taken into consideration by a manufacturer when designing its product. In an automobile dependent society, involving extensive usage, crowded highways, heavy loads and high speeds, the statistically inevitable consequences of normal use of an auto entails the proven hazard of injury producing collisions of different kinds. Since injury producing impacts are foreseeable, the manufacturer is

under a duty to design its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision.

■■ Viewing the evidence in its aspect most favorable to the plaintiffs (*Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504), it appears clear that an impact to the trunk of the Buehler's 1966 Ford Fairlane was an occurrence that was objectively reasonable to expect. In the event of such an impact it is also reasonable to expect that fire could develop in the trunk where the fuel system was located and could spread to the passenger compartment. In such a situation there would exist a high probability of serious burns or death resulting from an intense gasoline fed fire originating in the trunk. Testimony showed that Ford could have used a strap mounted tank that would have greatly reduced the risk of fire upon a rear-end impact. This type of tank was in fact used by Ford in prior as well as subsequent comparable models. Chrysler and General Motors had always used the strap mounted fuel tank. Moreover, there was testimony that the cost of placing a shield, in the 1966 Ford Fairlane, between the passenger compartment and the fuel containing system would only be one dollar plus one-half hour of labor time. Such a shield would have substantially reduced the risk of injury to the plaintiffs by providing additional time to effectuate an escape. We note that in the instant case it took less than one minute for the occupants to be removed from the burning vehicle. We are therefore of the opinion that the risks of harm to the plaintiffs were not so improbable or extraordinary as to be unforeseeable to Ford and that Ford owed the plaintiffs a duty to design its vehicles so as to reduce the probability of the injuries suffered.

■■ We are now led to determine if the plaintiffs made a *prima facie* case that one or any design defect proximately caused the plaintiffs' injuries. Ford contends that the plaintiffs failed to sustain their burden of proof. Causation is primarily a question of fact for a jury to determine. (*Hepler v. Ford Motor Co.*, 27 Ill. App. 3d 508, 327 N.E.2d 101.) If there was sufficient evidence from which a jury could find that an unreasonably dangerous condition existed in the Ford Fairlane by reason of its design and that the fire or the instantaneous spread of fire into the passenger compartment, resulted from that condition, then the jury's verdict must be left undisturbed.

The evidence viewed in the light most favorable to the plaintiffs shows that upon impact the Buehler auto immediately burst into flames from a gasoline source in the interior of the car. Expert testimony showed that the location of the fuel tank, filler spout and gas cap in the trunk made them extremely vulnerable in the event of a rear-end impact; that the flange mounted tank was susceptible to stress; and that the filler spout tended to be displaced into the trunk and the gas cap could break off in the event of a rear-end impact. In addition, the lack of any shielding

device between the passenger compartment and the trunk permitted any fire that would develop in the trunk to spread without resistence into the passenger compartment. In the experts' opinion these conditions were unreasonably dangerous and were causally related to plaintiffs' burns. They believed that upon impact the spout was displaced into the trunk and that the configuration change of the fuel tank broke the gas cap off and forced gasoline to spray into the trunk. The fire, that resulted from a spark from the impact, instantly spread into the passenger compartment because no barrier protected that compartment and therefore the plaintiffs suffered serious burns, even though they were extracted in one minute or less.

We are satisfied that there was sufficient evidence to support the jury's verdict.

Ford also contends that it is entitled to a new trial because of certain trial errors that were committed. The first of these concerns the reading into evidence of the question and Ford's answer to plaintiffs' interrogatory number 28:

> "Please list all tests performed, of every nature and description whatsoever, and whether performed by the defendant or not, along with results and analyses and interpretations thereof, which were made on the 1966 Ford Fairlane 500 or any Ford preceding it if it was not dissimilar, in which the automobile was subjected to any form of impact collision, upset, fire or other force of any sort whatsoever, or in which the tank or gas was subjected to such force or pressure and give the following information: (a) Where and when performed; (b) By whom performed and for whom; (c) Nature of the tests; (d) Results of the tests; (e) Analyses of the tests; (f) Interpretations of the tests."

To this question Ford answered, "None."

■■ Ford contends that its answer to interrogatory number 28 did not constitute an admission and was not relevant. We disagree. Answers to interrogatories may be used in evidence as an admission by a party-opponent in the same manner as any other admission made by that party, providing that it is relevant. (Ill. Rev. Stat. 1975, ch. 110A, pars. 213(f), 212(a)(2); *Buckler v. Sinclair Refining Co.*, 68 Ill. App. 2d 283, 216 N.E.2d 14.) Generally, any statement made by a party or in his behalf, which is inconsistent with a claim or a position asserted by him in litigation, may be introduced into evidence against him. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769; *Quincy Trading Post, Inc. v. Department of Revenue*, 12 Ill. App. 3d 725, 298 N.E.2d 789.

Ford, in its pleadings, answered plaintiffs' allegations by a general denial and it raised as affirmative defenses that it owed plaintiffs no duty under the circumstances and that rear-end collisions were not a proper

use of the auto. The answer by Ford that it knew of no tests analyzing the potential consequences of a collision with its automobile was inconsistent with and tended to refute its position at trial that the consequences of the impact in question were not foreseeable to Ford at the time it designed the vehicle.

For the same reasons, Ford argues that error was committed in admitting a portion of a report by a Ford subsidiary employee which called attention to hazards associated with the flange mounted fuel tank. The portion of the report that was admitted into evidence was clearly inconsistent with Ford's position at trial that the fuel tank was not unreasonably dangerous and hence was properly placed before the jury as an admission. (*Nelson v. Union Wire Rope Corp.*) However, the trial court also admitted into evidence Ford's answer to an interrogatory in which Ford denied the existence of the report. The answer to the interrogatory we find cannot be construed to be a statement which is inconsistent with a position taken by Ford at trial. Nor was the statement used to impeach any witness as it may have properly been used. The plaintiffs' purpose in reading the interrogatory as substantive evidence, was clearly designed to show that Ford was not truthful in its answer. This we believe was error.

Despite Ford's answer to interrogatory number 28, prior to trial Ford informed plaintiffs and co-defendant Whalen of certain tests that had been conducted. These tests were introduced into evidence. Subsequently, after plaintiffs had rested and during the cross-examination of Ford's expert witness Gorker, information was developed suggesting that other additional tests had been conducted by Ford. From the nature of the cross-examination, a clear inference was put into the minds of the jury that these newly disclosed collision tests were relevant and material to the issues.

Codefendant Whalen made a motion to strike Ford's pleading and find Ford in default. This motion was denied. Instead the trial court chose to resolve the question in a contempt proceeding following the trial, wherein a fine would be levied if the court found that the tests were material and wilfully withheld. Ford was thereafter found *not* to be in contempt. The court found that although Ford withheld information it could have easily made available to the parties, the information had not technically been requested.

Ford offered to prove that the data in question was to a large degree inapplicable and unrelated to the issues at trial and that none of the test results would have supported the plaintiffs' claims or detracted from them. This offer was refused by the court. Over Ford's objection the trial court gave codefendant Whalen's instruction number 9:

> "If a party to this case has failed to offer evidence within its power to produce, you may infer that the evidence would be

adverse to the party if you believe each of the following elements:

1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have produced the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown." (IPI-Civil No. 5.01 (2d ed. 1971.)

In his closing argument counsel for codefendant Whalen said: "And unfortunately I don't know, and you don't know and the Court doesn't know just what did happen in some of those tests. But the Court will tell you you can infer that those tests would not have been favorable to Ford Motor Company if you believe the elements of the instruction involved in that."

Ford contends that the trial court committed prejudicial error in refusing Ford's offer of proof and in giving the jury the instruction.

We believe that there is merit to these assignments of error. The trial court refused Ford's offer of proof because it had not revealed the existence of the tests in its answer to interrogatory 28. The question of what should be the appropriate sanction, if any, to be applied by the trial court for a failure to produce evidence in response to a proper interrogatory is within the discretion of the trial court. (*Buckler v. Sinclair Refining Co.*, 68 Ill. App. 2d 283, 216 N.E.2d 14; *Garofalo v. General Motors Corp.*, 103 Ill. App. 2d 389, 243 N.E.2d 691.) It is fundamental, however, that the purpose of the imposition of sanctions should be to promote the goal of discovery, not to punish the offending party. (*People ex rel. General Motors Corp. v. Bua*, 37 Ill. 2d 180, 226 N.E.2d 6.) Some of the criteria that should be weighed by a court in determining that a sanction should be employed are, surprise to the opponent, the good faith of the party offering the evidence, equal opportunity and access of the opponent to the evidence before trial, and prejudice to the opponent. *Ocasio-Morales v. Fulton Machine Co.*, 10 Ill. App. 3d 719, 295 N.E.2d 329.

■■ The additional collision tests here were largely unrelated to the circumstances at issue during the trial. The data produced from the tests would not have added support to either the plaintiffs' claims or to defendant Whalen's defense nor detract therefrom. The trial court after a hearing had found that Ford had not wilfully withheld this information because it had not been clearly requested. Because of the cross-examination of Ford's witness during which the jury first learned of the existence of this material, the jury was left with the clear suggestion that Ford deliberately contrived to hide relevant evidence. If the evidence had been admitted, it would not have affected the claims of Ford's

opponents, yet by refusing to admit it the jury was left with the false impression of Ford's ill motives. This is precisely the impression the plaintiffs and Whalen argued would be an appropriate sanction against Ford. Under the circumstances, this sanction constituted an abuse of discretion. *Department of Transportation v. Mainline Center, Inc.*, 38 Ill. App. 3d 538.

■■ The error was seriously compounded by the giving of IPI-Civil No. 5.01 (2d ed. 1971). This instruction permitted the jury to infer that the allegedly relevant evidence denied them by Ford tended to prove that the design of the Ford Fairlane was unreasonably dangerous. Yet in fact there was no basis to permit such a presumption. (*Cicale v. Aronson*, 113 Ill. App. 2d 324, 252 N.E.2d 114.) The evidence had not been brought before the jury because of the trial court's ruling; had it been the jury could have considered all the facts concerning the tests and their relevance.

■■ While we recognize the seriousness of the trial errors and the closeness of the question of whether Ford was afforded a fair trial, there is ample proper evidence of defective design and proximate cause from which reasonable men would have found liability on the part of Ford. We note that it was Whalen's counsel who was primarily responsible for the trial errors that were made. The errors were prejudicial but we cannot say that a different verdict would have been the result had they not been made. As a result we do not award Ford a new trial.

Ford contends that the jury's verdict against it was against the manifest weight of the evidence. After reviewing the record, however, we cannot say that there is any merit to Ford's contention.

Whalen's first contention involves proximate cause. Whalen points out that the case at bar involves a "second collision" set of facts in which all of plaintiffs' injuries were burns. She contends that though her negligence caused the initial collision, her conduct did not as a matter of law proximately cause the plaintiffs' burn injuries because the injuries were caused by Ford's design defects and neither the injuries nor the intervening cause thereof were reasonably foreseeable to her.

■■ ■ For a negligent act to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act and be of such a character as an ordinary prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise harm which resulted from his act. (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497; *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74.) An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed. (Restatement (Second) of Torts §441(1).) An intervening force will not break a causal connection if that force was itself

probable or foreseeable by the original wrongdoer. (*Neering v. Illinois Central R. R. Co.; Green v. Welts*, 130 Ill. App. 2d 600, 265 N.E.2d 188.) Whether Whalen's negligent act was the proximate cause of plaintiffs' burn injuries is a question of fact to be determined by the jury. (*Sabo v. T. W. Moore Feed & Grain Co.*, 97 Ill. App. 2d 7, 239 N.E.2d 459.) Their verdict could only be set aside if all the evidence, when viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favors Whalen that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.

In our view the second collision, that is, the instantaneous fire which invaded the auto's passenger compartment, was not such an unusual or infrequent consequence of a rear-end collision as to be unforeseeable. Whalen takes too narrow a view in suggesting that the design defects must themselves be foreseeable, the precise manner that the plaintiffs' injuries were enhanced is not significant, so long as it was reasonably foreseeable that such injuries would occur and they were the natural and probable result of the negligent act. We find that there were sufficient facts from which the jury could conclude that Whalen's negligence proximately caused plaintiffs' injuries.

■■ Whalen next contends that the trial court erred in instructing the jury on proximate cause. Whalen tendered only the first sentence of IPI—Civil No. 15.01 (2d ed. 1971) which states: "When I use the expression 'proximate cause', I mean that cause which, in natural or probable sequence, produced the injury complained of." The court, however, gave the jury the entire instruction which additionally states: "It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

The notes on the use of this instruction provide that: "This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff)." IPI—Civil No. 15.01 (2d ed. 1971).

Here there was a complete absence of any evidence of contributory negligence by any plaintiff which may have made use of the full instruction improper. (*Budovic v. Eschbach*, 349 Ill. App. 163, 110 N.E.2d 477.) From the evidence, the jury could find that the conduct of both Whalen and Ford concurred or contributed to cause the plaintiffs' burn injuries. (*Allen v. Pire*, 102 Ill. App. 2d 421, 242 N.E.2d 450.) Consequently, we cannot say that the jury was misled by the use of the full instruction.

■■ Whalen also argues that the trial court erred in giving the jury an instruction not to allocate the damage between the defendants (IPI—Civil No. 41.04 (2d ed. 1971)), citing *Gertz v. Campbell*, 55 Ill. 2d 84, 302

N.E.2d 40, *rev'g in part*, 4 Ill. App. 3d 806, 282 N.E.2d 28.

In discussing the liability of a manufacturer for a negligent design we stated in *Mieher v. Brown*, 3 Ill. App. 3d 802, 812, 278 N.E.2d 869, 876-877, *rev'd on other grounds*, 54 Ill. 2d 539, 301 N.E.2d 307: "We agree with *Larsen* [*v. General Motors Corporation*, (8th Cir. 1968), 391 F.2d 495, 503] that when there is negligent design '* * * the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damages or injury that probably would have occurred as a result of the impact or collision absent the defective design."

■■ On the basis of this quote, Whalen contends that the jury should have been instructed to apportion the damages in accordance with her tendered instruction. We are of the opinion that the trial court did not err in instructing the jury with IPI-Civil No. 41.04 (2d ed. 1971). The pleading filed by Whalen did not allege that Ford was solely liable for the plaintiffs' injuries or that Whalen was passively negligent, nor did it seek indemnification from Ford but it only generally denied liability. Moreover it was stipulated by the parties that each of the plaintiffs suffered only burn injuries. Under the circumstances here, both defendants could be found entirely liable for the single indivisible result of their contributing conduct. See Prosser, Law of Torts §52 (4th ed. 1971).

Whalen lastly contends that the trial court abused its discretion in failing to direct a verdict against Ford as a sanction for noncompliance with discovery rules. This contention involves Ford's failure to inform the plaintiffs and Whalen of its additional collision tests under plaintiffs' interrogatory number 28.

Ford moves that this court strike this portion of Whalen's brief. It is, however, elementary that an appellant can assign as error those rulings which adversely affect his interest. (*Gordon v. Gordon*, 6 Ill. 2d 572, 129 N.E.2d 706.) While Whalen had an interest in discovering information properly requested, and Ford knew of Whalen's reliance on its answer to the interrogatory, we do not believe under the facts of this case, that the court abused its discretion by not defaulting Ford. *Ocasio-Morales v. Fulton Machine Co.*, 10 Ill. App. 3d 719, 295 N.E.2d 329; *Schwartz v. Moats*, 3 Ill. App. 3d 596, 277 N.E.2d 529.

The judgments are affirmed.

KARNS, P. J., and G. J. MORAN, J., concur.